JOHN H. HANDY, LEVIN T. H. IRVING, and others *vs.* JOHN McKIM, EMILY McKIM REED, and others.

*Principle in Expounding Deeds—Life estate—Ultimate limitation in Deed—Fee simple—Rule in Shelley's Case— Heirs—Statute of Uses—Feofment—Legal estate—Equitable or Trust estate.*

In expounding deeds the intention of the parties shall prevail, if not repugnant to some principle or maxim of the law; and the intention is to be gathered by considering the whole deed, and each and every part thereof. And in construing deeds of conveyance of a freehold estate, the Court will, if appropriate terms be employed, treat them either as deeds of feofment or deeds of bargain and sale, as will best subserve the objects and purposes in contemplation of the parties.

The terms of conveyance in a deed for a parcel of ground were, " do give, grant, bargain and sell, alien, enfeoff, and convey unto the said parties hereto of the second part, and the survivor of them,

*and the heirs* of such survivor, *in special trust,* that the said Ann McKim be *permitted and suffered, during the term of her natural life,* to have, hold, use, occupy, possess and enjoy, the described premises, and the rents, issues and profits thereof to receive, take and apply to her own separate use and benefit, whether she be *sole or covert,* so that neither the ground, or any part thereof, nor the rents, issues or profits of the same, should, in any manner, be liable, or subject to the control, power or disposition of any future husband the said Ann might have, or be in any wise liable for his debts; and that the receipts of the said Ann alone, whether sole or covert, should be good and effectual acquittances for such rents and profits; and from and immediately after the decease of the said Ann, then in trust, for the child or children that she might have, his, her or their heirs," &c. "But in case the said Ann McKim shall depart this life without leaving a child or children, or descendants of the same, living at the time of her death, then to the use and benefit and behoof of such person or persons as would, by the *now* existing laws of the State of Maryland, *be entitled to take an estate in fee simple in lands by descent from her.*" HELD:

That the life estate limited to *the cestui que trust* in this deed, was not enlarged to a fee simple estate by the ultimate limitation therein to such person or persons as would *be entitled to take an estate in fee simple by descent* from the said *cestui que trust,* the operation of the rule in *Shelley's Case* being excluded by the absence of the word *heirs* from the limitation.

In a subsequent deed to the trustees named in the former deed, for another parcel of ground, the terms employed in the granting clause were, "do grant, bargain and sell, alien, enfeoff, release, assign, and convey unto the said parties hereto of the third part (the grantees,) and the survivor of them, and the heirs of the survivor, all that piece or parcel of ground," &c. The property was conveyed in *trust* for Mrs. Ann McKim Handy, then a *féme covert* (she having intermarried with Samuel J. K. Handy), for and during her life, and for her sole and separate use, with the usual provisions excluding all right and control of her then or any future husband, or liability for his debts. And in default of child or children, or their descendants, then to the *right heirs* of the said Ann, and their assigns forever. Mrs. Handy never had children and survived her husband. HELD:

1st. That allowing the clearly expressed intention of the parties to this deed its legitimate effect, the statute of uses did not operate to execute the use or trust declared by the deed for the sole and

separate enjoyment of the *cestui que trust* for life, and to that extent at least, the trustees took and held the legal estate, and consequently the separate use limited to the *cestui que trust*, was but an equitable or trust estate.

2nd. That treating this deed as a feoffment, and to effectuate the plain intention of the parties, the ultimate use limited to the right heirs of the *cestui que trust* was executed by the statute, and thus became a legal estate in remainder to such right heirs,—the term *heirs* being used as a mere *descriptio personarum*.

3rd. That the *cestui que trust* acquired no estate under either of the deeds that she was competent to dispose of by will.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., YELLOTT, STONE, MILLER, ROBINSON, and BRYAN, J.

*John H. Handy*, and *John W. Crisfield*, for the appellants.

I. These conveyances must be considered either as feoffments, or as deeds of bargain and sale; and they may be taken as either, the one or the other; (*Matthews vs. Ward*, 10 *G. & J.*, 449,) and all the estates raised by the limitation to use, declared therein, are of the same nature and quality, whether that be legal or equitable.

II. As feoffments, the intention expressed characterizes and controls their operation; they may be considered in either of two ways:

1st. Imposing no active duties on the feoffees as trustees, nor giving them any powers over, nor any beneficial interest in, the estate, these deeds, created no trust, but the bare legal estate to the use declared, which was executed in the *cestui que use*, by force of the statute, and vested the legal estate according to the limitations of the use. And as supporting this view, it should be continually borne in

mind, that in the first deed, the use is to a *féme sole,* which takes it quite clear of the rule, as to married women.

*2nd.* The second mode of considering it presents solely a question of the construction and scope of the *habendum.* Its words are "all the estate, right, title, interest, use, trust, &c., to have and to hold to the grantees and their heirs, in trust and special confidence, for," &c.,—terms broad enough to cover and convey both the estate and the use in the grantees, in special trust, for the *cestui que use. Cornish on Uses* (3 *Law Lib.*), *ch.* 2, *secs.* 2 and 3—*marginal* 39, *and also page* 57; *Ware vs. Richardson,* 3 *Md.,* 550, 558; 2 *Crabbe's Law of Real Property,* 468, 508, 509—*sec.* 1704, (55 *Law Lib.*); *Brown vs. Renshaw,* 57 *Md.,* 73.

III. As Bargains and Sales. Appropriate terms being used, and a money consideration appearing, these conveyances may be held to be deeds of bargain and sale; and if so, the use was executed in the bargainors, and they became thereby seized as the legal owners of the entire estates; and all the subsequent estates, were mere trusts in equity; and all of the same nature and quality. 2 *Crabbe's Law of Real Property, sec.* 1656, *page* 478, *marg.* (55 *Law Lib.*); *Matthews vs. Ward,* 10 *G. & J.,* 449; *Brown vs. Renshaw,* 57 *Md.,* 73; *Jackson vs. Cary,* 16 *John. Reps.,* 302; *Ware vs. Richardson,* 3 *Md.,* 544.

IV. If the estates limited to the *cestui que use* were all of the same nature and quality, whether, they were legal or equitable estates, the life estate of the first *cestui que use* coalesced with the remainder in fee to her heirs, and she took an estate in fee simple, by virtue of the rule in *Shelley's Case;* determinable on her death, without child or descendant living at the time of her death. The rule in *Shelley's Case* extends to all those limitations, in which, the heirs of the person to whom a previous estate of freehold is given, are to take under that application in its tech-

nical sense, embracing all the heirs, of the given descrip-
tion, and no others. *Preston on Estates,* 266, 273–4, *mar-
ginal page.*

The word " heirs " is not used in the first deed, but it is
substituted by the phrase, "such person or persons as
would, by the now existing laws of Maryland, be entitled
to take an estate in fee simple in lands, by descent from
her,"—of precisely equivalent import. *Idem* 266, *margi-
nal.* The person entitled to take an estate in lands by de-
scent from her, can be none other than her heir. He
would take in the character of heir; and he who takes in
the character of heir, must take in the quality of heir.
*Jones vs. Morgan,* 1 *Brown Ch. Rep.,* 206, 216, 219, *margi-
nal; 2 Thos' Coke, note P,* 168, 176, *top page* In the
second deed the limitation in remainder is to her " right
heirs." To both of these deeds the rule extends; the life
estate of the first taker coalesces with the fee in remain-
der to her heirs, and gives her the fee. *Ware vs. Richard-
son,* 3 *Md.,* 544 ; *Brown vs. Renshaw,* 57 *Md.,* 73; *Simpers vs.
Simpers,* 15 *Md.,* 160, 187 ; *Clarke vs. Smith,* 49 *Md.,* 165 ;
*Woollen vs. Frick and Golder,* 38 *Md.,* 428; *Denton vs.
Denton,* 17 *Md.,* 403 ; *Goldsborough vs. Martin.* 41 *Md.,*
498; *Warner vs. Sprigg,* 62 *Md.,* 14.

Again, these deeds disclose a particular intent, that
Ann McKim should have a life estate in the lands in ques-
tion, and also a general intent, that at and after her death,
on a certain contingency, it should go " to such person or
persons as would be entitled to take an estate in fee sim-
ple in lands by descent from her," by the first deed, and to
the "right heirs of the said Ann" by the second. How is
this possible, except upon the ground that she has an es-
tate of inheritance ? When the particular intent, and the
general intent, cannot both be gratified, the former must
give way to the latter. This is the rule in respect to the
interpretation of wills; is there any reason why it should
not apply to the interpretation of deeds?

V. And, if it be held, that the estates of the first mentioned *cestui que use,* were either legal or equitable estates in fee, on her death, without child or descendant then living, all the purposes of the trust, if there was one created, were thereby fully satisfied and completed; and the contingency on which her estate was to determine having become impossible, her devisees took the legal estates, and the right of possession. 2 *Crabbe's Law of Real Property,* 597, 598; *Jackson vs. Moore,* 13 *John.,* 523; *Matthews vs. Ward,* 10 *G. & J.,* 455, 456; *Adams on Ejectment,* 33; *Leonard's Lessee vs. Diamond,* 31 *Md.,* 536.

Mrs. Handy's will did not lapse by the death of the devisee in the life-time of the devisor. *Act of* 1810, *ch.* 34, *sec.* 4; *Art.* 93, *sec.* 304, *of the Code*; *Glenn, Adm. Clery vs. Bell, Adm. Volunbrun,* 7 *G. & J.,* 363.

*Richard M. Venable,* and *Charles Marshall,* for the appellees.

ALVEY, C. J., delivered the opinion of the Court.

This is an action of ejectment brought by the appellants against the appellees to recover two several parcels of ground in the City of Baltimore. The case was submitted to the Court below, without the aid of a jury, upon an agreed statement of facts, and judgment *pro forma* was entered for the appellees by consent. It is from this judgment that the appeal is taken; and the object of the appeal, as declared by the agreement of the parties, is to obtain the judgment of this Court "as to the true construction and legal effect" of two deeds made part of the agreed statement of facts submitted to the Court.

The first of these deeds, dated the 20th of April, 1836, is from John McKim, Jr., and wife, the father and mother of Ann McKim, to David T. McKim and John S. McKim,

trustees, upon certain special trusts set forth in the deed. The consideration recited is that of natural love and affection for the daughter, and of the sum of five dollars money paid by the grantees. This deed is for one of the parcels of ground sued for ; and, in the premises thereof, the terms of conveyance are, "do give, grant, bargain and sell, alien, *enfeoff*, and convey, unto the said parties hereto of the second part, and the survivor of them, *and the heirs* of such survivor, *in special trust*, that the said Ann McKim be *permitted and suffered, during the term of her natural life*, to have, hold, use, occupy, possess and enjoy, the described premises, and the rents, issues and profits thereof to receive, take and apply to her own separate use and benefit, whether she be *sole or covert*, so that neither the ground, or any part thereof, nor the rents, issues or profits of the same, should, in any manner, be liable or subject to the control, power or disposition of any future husband the said Ann might have, or be in anywise liable for his debts ; and that the receipts of the said Ann alone, whether sole or covert, should be good and effectual acquittances for such rents and profits; and from and immediately after the decease of the said Ann, then in trust, for the child or children that she might have, his, her or their heirs," &c. "But in case the said Ann McKim shall depart this life without leaving a child or children, or descendants of the same, living at the time of her death, then to the use and benefit and behoof of such person or persons as would, by the *now* existing laws of the State of Maryland, *be entitled to take an estate in fee simple in lands by descent from her."*

At the date of the deed just recited, Ann McKim, the *cestui que trust*, was a *féme sole*, but before the date of the second deed, the 28th of November, 1837, she had married Samuel J. K. Handy ; for in the deed of that date she is described as the wife of said Handy. This latter deed was made by F. G. Waters and wife, and Samuel

Hobbs, to David T. McKim and John S. McKim, the trustees named in the former deed, and. was for the other parcel of ground sued for. The deed sets forth a money consideration, and the terms employed in the granting clause thereof, are, "do *grant, bargain and sell, alien, enfeoff,* release, assign, and convey unto the said parties hereto of the third part (the grantees), and the survivor of them, *and the heirs of the survivor,* all that piece or parcel of ground," &c. The general scheme of the trusts declared by this deed is similar to that declared in the former deed, though different in some particulars. The trusts declared are that Mrs. Handy should be *permitted and suffered, during her life,* to hold, use, possess and enjoy the premises described, and the rents, issues and profits thereof *to receive, take and apply,* to her own separate use and benefit, her coverture notwithstanding, so that neither the property described, or any part thereof, nor the rents, issues and profits of the same, should in any manner be liable or subject to the control, power, or disposal of her then or any future husband, or be in any way liable for his debts; and the receipts of Mrs. Handy alone, whether sole or covert, were declared to be good and effectual acquittances for such rents, issues and profits; and from and immediately after her death, then in *trust,* that the property should descend to and become the estate and property of her child or children, if any she should have, their heirs and assigns forever, &c. But in case the said Ann McKim Handy shall depart this life without leaving a child or children, or descendants of the same living at the time of her death, then to the use, benefit and behoof of the *right heirs* of the said Ann McKim Handy and *their assigns* forever."

Mrs. Handy never had issue of her body, and she survived her husband, Samuel J. K. Handy, and died in 1883. Her husband, Mr. Handy, died in 1871. In 1852, during the coverture, Mrs. Handy, with the assent of her

husband, duly made her will, whereby she devised the property, embraced in both of the deeds, to her husband, upon the assumption that she took a fee simple estate, either legal or equitable, under those deeds; and the will was duly admitted to probate after her death. The appellants claim through, and as heirs-at-law of, Samuel J. K. Handy, under and by virtue of the devise to him; and the appellees are in possession of the property, and are the heirs-at-law of Mrs. Ann McKim Handy, though it is not stated that they claim to hold as the heirs-at-law of Mrs. Handy.

For the appellants it is contended that under the two deeds in evidence Mrs. Handy took estates in fee simple in the property conveyed, either legal or equitable, by the application of the rule in *Shelley's Case* (1 *Co.* 93 *b.*); and that by the will of Mrs. Handy, (the devise being saved from lapse by statute,) the title devolved on the appellants as heirs-at-law of her deceased husband. While on the other hand it is contended for the appellees, that Mrs. Handy took only an estate for her life under the deeds, and that, therefore, she was not competent to dispose of the property by will. These contentions give rise to the questions necessary to be decided on this appeal.

In expounding deeds no principle is more familiar or better established than that the intention of the parties shall prevail, if not repugnant to some principle or maxim of the law; and that the intention is to be gathered by considering the whole deed, and each and every part thereof. As was declared by the Court of Appeals in *Budd vs. Brooke,* 3 *Gill,* 234, "In construing a grant, it is the duty of the Court, first, to ascertain what the parties intended should be effected by it; and that intention being collected from an inspection of the grant itself, it is the duty of the Court to give to it such an interpretation as will effectuate that intention, provided the terms and expressions used in the grant will admit of such a construction." And in construing deeds of conveyance of a

freehold estate, such as those under consideration in this case, the Court will, if appropriate terms be employed, treat them either as deeds of feoffment or deeds of bargain and sale, as will best subserve the objects and purposes in the contemplation of the parties. *Matthews vs. Ward,* 10 *G. & J.,* 448, 449; *Ware vs. Richardson,* 3 *Md.,* 546. The Act of 1766, ch. 14, provided for recording of deeds of feoffment as well as of deeds of bargain and sale, and the enrollment of such deeds is a substitute for the act of livery, and is equivalent to it. Here both deeds in question contain operative words to make them either deeds of feoffment, or deeds of bargain and sale ; and whether they are to be taken as being the one or the other species of con-veyance, must depend upon construction to subserve the manifest intention of the parties. If construed to be deeds of bargain and sale, the uses declared are not operated upon by the statute of uses, further than to vest the legal estate in fee in the bargainees, the trustees, and all the uses declared remain unexecuted by the statute, and are trusts and mere equitable estates. Whereas, if construed to be deeds of feoffment, being common law assurances, the question of the operation of the statute of uses— whether and when it will operate to execute the use or uses declared and convert them into legal estates—will depend upon the nature of the trust and of the duties imposed upon the feoffees as trustees ; for if the duties create a *special or active trust* in the feoffees, the uses in respect of which such duties are required to be performed are not within the purview of the statute, and remain unexecuted and are mere trusts, and constitute equitable estates in the *cestui que trust,* the legal estates remaining in the feoffees. But whenever such special trust or active duties shall cease, there being no longer any object to serve by keeping separate and distinct the legal and equitable estates, the statute of uses operates and executes the legal estate in the *cestui que trust.* 1 *Perry on Trusts, sec.* 320, and cases there collated.

1. Now, with respect to the deed dated the 20th of April, 1836, the first question is, whether the ultimate limitation in that deed, to such person or persons as would be entitled to take *an estate* in fee by descent from Ann McKim, is such as could, by force of the rule in *Shelley's Case*, unite with the previous life estate limited to Ann McKim, and thus vest in her a fee simple estate, either legal or equitable ? In other words, in order to invest a party with a fee simple estate by *deed*, and such deed as that before us, is it necessary that the word *heirs* should be employed in the limitation ?

As Lord Coke has well said, in speaking of the use or office of the word *heirs;* "there are words so appropriated by the law, as that they cannot be legally expressed by any other word, or by any periphrasis or circumlocution." *Co. Litt.* 9 *a.* From the time before Littleton we find that the word *heirs* was essential in a deed for the limitation of an estate in fee. In *Littleton's Tenures, ch.* 1, *sec.* 1, the author says, "if a man would purchase lands or tenements in fee simple, it behooveth him to have these words in his purchase. To have and to hold to him and to his heirs; for these words (his heires) make the estate of inheritance. For if a man purchase lands by these words, To have and to hold to him forever; or by these words, To have and to hold to him and his assigns forever ; in these two cases he hath but an estate for term of life, for that there lacke these words (his heires), which words *only* make an estate of inheritance in all feoffments and grants." And Coke, in commenting upon this section of Littleton, after speaking of the comprehensive meaning and peculiar office of the words *his heirs,* says, "the reason wherefore the law is so precise to prescribe certaine words to create an estate of inheritance, is for avoiding of uncertainty, the mother of contention and confusion." And so *Blackstone,* (2 *Comm.* 107, 108,) *Wooddeson,* (*Lect. Vol.* 2, *p.* 276,) *Cruise,* (4 *Dig. tit. Deed, ch.* 21, *p.* 295,) and *Kent,* (4 *Comm.* 5-6,) all

concur in stating the rule, that in order to create an estate in fee by deed the word *heirs* is essential and cannot be supplied by any other word.   And the same general principle, as applied to deeds, is embodied by Preston in his statement of the rule in *Shelley's Case:* 1 *Prest. Est.,* 263-4.   But we are not without authority in this Court upon the subject.   In the case of *Hollingsworth vs. McDonald,* 2 *H. & J.,* 235, it was laid down by the Court of Appeals as an indisputable rule of real property law, that "In a deed or conveyance of a freehold or legal estate, technical words are appropriated by law to the creation or limitation of particular estates ; for instance, to create an estate in fee, the limitation must be to J. S. and *his heirs,* and to create a fee tail, to J. S. and the *heirs* of his body.   It is established, however, that the words *de corpore suo* are not indispensably necessary, but may be supplied by words equipollent or tantamount, plainly designating or pointing out the body from which the heirs inheritable are to issue or descend."   In that case the limtation was to T. P. and his heirs, and in case of his death without lawful *issue,* the estate to revert to R. P. and his heirs.   And it was held that the subsequent words, "in case of his death without lawful issue," should be allowed to qualify and restrain the generality of the precedent expressions, (to T. P. and his heirs,) and point out the heirs intended to inherit, and confine them to heirs of his body.

This general rule, however, that the word *heirs* is absolutely necessary in a deed to create an estate in fee, has some few well recognized exceptions, as shown in *Cruise's Digest* (4 *Cr. Dig. tit. Deed, ch.* 21); but the excepted cases do not embrace deeds of the character of the one under consideration.   As instances of exceptions to the rule, we may refer to the cases of *Budd vs. Brooke,* 3 *Gill,* 234, 235 ; *Spessard vs. Rohrer,* 9 *Gill,* 261 ; *Farquharson vs. Eichelberger,* 15 *Md.,* 73 ; *Hawkins vs. Chapman,* 36

*Md.*, 94; *Merritt vs. Disney*, 48 *Md.*, 351.   And the strict rule requiring the use of the word *heirs* is confined to deeds; as in wills a more liberal and less technical rule prevails.   And in what we have said in regard to the rule, we must be understood as referring exclusively to the requirement of the common law, as enforced in this State at the date of the deed, wholly irrespective of any subsequent legislation upon the subject.   Seeing then that the word *heirs* was required in the ultimate limitation over to let in the operation of the rule in *Shelley's Case*, it follows that the life estate limited to Ann McKim was not enlarged to a fee simple estate, and that the rule in *Shelley's Case*, has no application whatever.   The limitation over to such person or persons as would be entitled to take from Ann McKim by descent, was in default of lineal descendants from her, and at most such limitation could only be *designatio personae vel personarum*, who should take by purchase.   For as will be observed, it is not to such person or persons as would be entitled to take the particular estate by descent, but as would be entitled to take *an estate* in fee simple, that is to say, any estate in fee simple by descent from her.   And that being so, whether the persons designated to take as by descent were intended to embrace all those who could take by descent in any condition of case, as well those *ex parte materna* as those *ex parte paterna*, or otherwise, is a question of no easy solution; and therefore it would be quite impossible to treat as *heirs* the persons designated in the limitation, so as to let in the operation of the rule in *Shelley's Case*, even if the rule in regard to the use of the word *heirs* was very much less strict than it is shown to be, and would allow of the use of equipollent words, which, as we have shown, it does not.

2. We come now to the deed of the 28th of November, 1837, and that gives rise to the application of different principles from those applied to the deed just considered.

By this deed, as we have seen, the estate was conveyed to the trustees, and the heirs of the survivor of them. The property was conveyed in *trust* for Mrs. Ann McKim Handy then a *féme covert*, for and during her life, and for her sole and separate use, with the usual provisions excluding all right and control of her then or any future husband, or liability for his debts. And in default of child or children, or their descendants, then to the right *heirs* of the said Ann, and their assigns forever.

Mrs. Handy never having had children, if the use limited to her was executed, and converted into a legal estate, by force of the statute of uses, though the use was expressly limited to her for life only, that use thus executed into a legal estate would coalesce with the ultimate limitation to her right heirs, and vest in her a fee simple legal estate, by operation of the rule in *Shelley's Case.* That rule, briefly stated, is this: Where an estate for life is given to the ancestor, and afterwards by the same instrument, the inheritance is limited either mediately or immediately to his heirs, or heirs of his body, as a class to take in succession as heirs to such ancestor, the word *heirs* is a word of limitation and not of purchase; and the ancestor takes the whole estate. But in order that this rule may operate, the interest limited to the ancestor, and that to his heirs, must be of the same quality; that is, both legal, or both equitable; for if the first limitation be of a trust estate of freehold, and the subsequent one carries the legal estate, the rule will not apply, and the subsequent limitation must take effect, if at all, by way of remainder. This is in accordance with all the authorities upon the subject, and among them several cases decided in this Court.

What then was the nature and quality of the estate vested in Mrs. Handy, under the limitation to her for life, for her sole and separate use? Or, in other words, treating the deed as a deed of feoffment, did the statute of

uses operate to transfer the legal estate from the trustees and vest it in Mrs. Handy, notwithstanding the express declaration that the property should be held in trust for and during the term of her life, for her sole and separate use, free and discharged from all right and control of her husband, and from all liability for his debts? In regard to the intention of the parties to the deed there is no room for doubt. That it was the intention of the parties to invest the trustees with the legal estate, and that they should hold it in *special trust* for the life, and for the sole and separate use, of Mrs. Handy, and to the entire exclusion of all marital rights or control of the husband, would seem to admit of no kind of doubt whatever. And in construing the deed, it is the duty of the Court to give full effect to this manifest intention, as far as possible, consistently with the rules of law. If therefore we allow the clearly expressed intention of the parties its legitimate effect, it would seem to be too clear for question, that the statute of uses did not operate to execute the use or trust declared by this deed for the sole and separate enjoyment of Mrs. Handy, and that, to that extent at least, the trustees took and held the legal estate, and consequently the separate use limited to Mrs. Handy was but an equitable or trust estate. It has been settled by a large number of cases that if an estate be given to trustees upon trust for a married woman *for her sole and separate use,* and her receipts alone to be sufficient discharges ; or if the trust be to *permit* and *suffer* a *féme covert* to receive the rents to her separate use, the legal estate will remain in the trustees, and the statute will not execute it in the *cestui que trust.* 1 *Perry on Trusts, sec.* 310, and cases there cited. Or, as in the case of *Ware vs. Richardson,* 3 *Md.,* 505, where the trust was to hold to the separate use of the married woman, she to have the right to receive and convert to her own use the rents and profits, as if she was sole and unmarried, it was held that the statute did not execute the use.

But though the statute did not execute the separate use limited to Mrs. Handy for life, the question remains whether the ultimate use limited to her right heirs was executed by the statute, and thus became a legal estate in remainder to such right heirs,—the term *heirs* being used as a mere *descriptio personarum;* or whether such ultimate limitation remained unexecuted, and was a mere equitable estate, with which the previous equitable life estate limited to Mrs. Handy coalesced, so as to invest her with the equitable fee simple estate, by force of the rule, in *Shelley's Case?* This is the only remaining question for decision.

To support the action of ejectment the plaintiff is required to have the legal title and right of possession; and in view of that requirement the appellants must have brought this action upon the assumption that the deeds in question operated as *feoffments,* and that all the uses declared were executed legal estates, whereby Mrs. Handy became seized of a legal fee simple estate in the property sued for. For otherwise, upon the assumption that the conveyances were deeds of bargain and sale, the legal estate would be executed in the bargainees or trustees, and all the uses declared would be mere trust estates; and therefore, even conceding that Mrs. Handy did take an equitable fee by force of the rule in *Shelley's Case,* this action could not be maintained. *Matthews vs. Ward,* 10 *G. & J.,* 443.

But treating the deed as a feoffment, as we think we must do, in deference to precedent, and to effectuate the plain intention of the parties, the question whether the remainder limited to the right heirs of Mrs. Handy is an executed legal estate, is not open to any doubtful construction, but is really concluded by authority that we are not at liberty to disregard. It is true, the estate is limited to the surviving trustee in fee, but it is not to be supposed that it was intended that the estate should be held in trust

indefinitely and for all time, and the well settled principle is that the trustee shall take only so much of the legal estate as the purposes of the trust require. Here in respect to this ultimate limitation in remainder, the trustees had no duties whatever imposed upon them, and there was nothing that made it necessary that they should retain the legal estate. And in such case the statute is imperative that the use shall be executed into a legal estate, and does not allow the legal and equitable estates to remain separate and distinct.

In the case of *Ware vs. Richardson, supra,* there was involved the construction of a deed in no material respect differing from the present, that deed being to a trustee and his heirs, in trust for the separate use of a married woman for life, and after her death to and for the use and benefit of her legal heirs; and it was held, after careful and elaborate consideration, that the married woman took only an *equitable* estate for life, and the heirs in remainder a *legal* estate, by virtue of the statute of uses, and therefore the rule in *Shelley's Case* did not apply. The present deed cannot, upon any substantial ground, be distinguished from the deed in that case, which was construed as a feoffment, and, of course, the same construction must be adopted here. That case has been frequently referred to in subsequent cases, and the principle of it re-affirmed by the Court; and any attempt to distinguish this from that case could hardly fail to restrict if not seriously to impair it as an authority, and thus produce doubt and distrust of titles held under deeds of that class. We must therefore hold that Mrs. Handy acquired no estate under either of the deeds in evidence, that she could dispose of by will; and consequently the appellants have no title, either legal or equitable, in the property sued for, by virtue of the devise to the husband of Mrs. Handy.

In conclusion, it may be proper to say that the will of Mrs. Handy was made in 1852, upon the advice of that

learned and distinguished lawyer, the late John V. L. McMahon, and before the decision by the Court of Appeals of the case of *Ware vs. Richardson.* Both deeds, as it appears, were submitted to Mr. McMahon by Mrs. Handy, or by her direction, for his construction, as to the extent of her interest thereunder; and in his opinion, elaborately and carefully drawn, while he suggested that there was doubt enough to justify her in making her will, and disposing of the estate, upon the assumption that she held the estate in fee, by operation of the rule in *Shelley's Case,* and thus to raise the question for the decision of the Courts, yet he was strongly inclined to the opinion that the rule in *Shelley's Case* did not apply, and that her equitable life estate had not been enlarged. In regard to the first deed, he seems to have been very decidedly of opinion that under the ultimate limitation therein, and especially as a limitation by deed, Mrs. Handy's estate was not enlarged, and that she took only a life estate. And in regard to the second deed, he said "that construing the deed as one of feoffment, as it might and probably would be, to avoid the operation of this rule (the rule in *Shelley's Case*), the trustees would clearly take the legal estate during the life of Mrs. Handy; and the subsequent uses would most probably be held to be executed by the statute, so as to vest the legal estate in the remaindermen; and that, therefore, in this view of the deed, Mrs. Handy's estate for life, being an *equitable* one, could not unite with that to her right heirs as a *legal* one, and she would, therefore, take but a life estate." He was fully confirmed in this view of the legal effect of the deed, by the subsequent decision of the Court of Appeals, in *Ware vs. Richardson,* to which we have already referred.

It follows that the judgment below must be affirmed.

*Judgment affirmed.*

(Decided 9th March, 1886.)