## LILLIE LINK vs. CHARLES H. MacNABB, EXECUTOR.

*Landlord and Tenant—Validity of Judgment in Ejectment for Non-Payment of Rent Not Affected by Failure to Record Deed of Reversion—Effect of Judgment Against Tenant Who Has Life Estate in the Leasehold With Remainder Over—Construction of Conveyance With Conflict Between Granting and Habendum Clauses.*

When a landlord has obtained a judgment by default in ejectment against a tenant for non-payment of rent, after service of process, the operation of such judgment in extinguishing the leasehold interest is not affected by the fact that the deed conveying the reversion to the landlord, although executed before, was not recorded until after, the ejectment suit.

The leasehold interest in a lot of ground under a lease for ninety-nine years providing for a re-entry of the landlord in case the rent should be in arrear for six months, was conveyed to T. for life with remainder to her children. In an action of ejectment by the landlord for non-payment of rent, some of the children of the life tenant were not made parties defendant. *Held,* that the default in the payment of the rent followed by the judgment in ejectment and the re-entry of the landlord caused a forfeiture of the entire leasehold interest, including the interest of the remaindermen.

One D., the owner of the reversion in a lot of ground under a lease for ninety-nine years reserving an annual rent of fifty-three dollars, obtained a judgment in ejectment for non-payment of the rent against the holder of the leasehold interest and re-entered under a writ of *habere facias possessionem.* Afterwards he executed a deed conveying the property in absolute terms to B., his personal representatives and assigns, to hold to his use for life, and his personal representatives and assigns, for all the residue of the term yet to come and

unexpired therein, with the benefit of renewal forever, sub-
ject to the payment of the annual rent of fifty-three dollars.
Subsequently, the assignee of B. conveyed the lot back to D.
by an ordinary deed in fee. *Held,* that the hybrid convey-
ance to B. did not operate to convey to him a fee simple es-
tate; that his wife would not be entitled to dower therein, and
that after the conveyance back to D. the latter was seized of
the entire fee in the property.

*Decided November 17th, 1909.*

Appeal from the Orphans' Court of Baltimore City.

The cause was argued before BOYD, C. J., PEARCE,
SCHMUCKER, BURKE and THOMAS, JJ.

*E. J. W. Revell,* for the appellant.

*J. Martin McNabb* (with whom was *J. J. Archer* on the
brief), for the appellee.

SCHMUCKER, J., delivered the opinion of the Court.

The proceeding before us, although adversary in form, is
in fact an amicable one conducted to test the validity of a
title. The appeal was taken from an order of the Orphans'
Court of Baltimore City overruling exceptions and finally
ratifying an executor's sale of the land of which the title is
challenged.

The appellant does not question the power of the executor
or the regularity of the sale but he is unwilling to consum-
mate his purchase unless doubts which he entertains as to the
validity of the testatrix's title to the land can be set at rest.
A brief statement of the manner in which the land was ac-
quired by her will disclose the issues raised by the appeal.

On March 1st, 1888, R. E. Diffenderfer and wife leased
to T. H. Blakely a lot of ground in Baltimore City known as
No. 1621 North Calhoun street for 99 years at an annual
rent of fifty-three dollars. The lease was drawn in the usual

form and provided among other things "that if said rent in whole or in part shall be in arrear for six months then the said Diffenderfer, his heirs and assigns may re-enter upon the premises and thenceforth hold the same as though this lease had never been made."

The reversion in fee under this lease with the rent of fifty-three dollars, after divers mesne conveyances came to be vested in Mary A. Davis under a deed from Rachel S. Davis which was executed and delivered on the 9th of June, 1896, but was not recorded until May 24th, 1900. The leasehold estate created by the lease had in the meantime passed through a succession of assignments of which the last was made on Nov. 5th, 1890, by George Utterbaugh to Rose Taylor for her life with remainder to her children.

On June 5th, 1897, after Miss Davis had received the deed for the reversion in the lot, but before it had been recorded, she instituted a landlord's ejectment in the Superior Court of Baltimore City to recover possession of the lot upon a default of more than six months' ground rent. Rose Taylor, who then held the legal title to the leasehold with the right of possession, and all of her then living children, except James R. Taylor who lived out of Maryland, were made defendants to the ejectment and were duly served with process and a copy of the declaration left with each of them. Mrs. Taylor had several other children who had died, prior to that time in childhood unmarried and without issue. Her son James R. Taylor also died afterwards unmarried and without issue.

None of the defendants resisted the ejectment and judgment in favor of the plaintiff therein was entered by default which, after the filing by her of the statutory landlord's affidavit, was made absolute on July 31st, 1897, and a writ of *habere facias possessionem* issued thereon under which she was put in possession of the lot and premises by the sheriff. The record in the present case does not show the filing of the landlord's affidavit in the ejectment but that fact was dis-

closed by an examination of the original papers in the pro-
ceeding in the Superior Court.

After the reversion and leasehold estates in the lot had thus
been united in Miss Davis she, jointly with Rachel S. Davis
from whom she had acquired the reversion, executed a deed
to William H. Bradley on October 25th, 1897, purporting to
convey him an interest in the lot. The grant in that convey-
ance was in absolute terms to Wm. H. Bradley *his personal
representatives and assigns* while the *habendum* ran to his
use "for life and his personal representatives and assigns for
all the residue of the term of years yet to come and unex-
pired therein with the benefit of renewal forever subject to
the payment of the annual rent of fifty-three dollars payable
semi-annually to the aforesaid Mary A. Davis," etc. In the
recitals of the conveyance the lot was said to be the same as
the one assigned by George Utterbaugh to Rose Taylor on
November 5th, 1890.

William H. Bradley in March, 1898, made a conveyance
of the lot to Charles C. Levy in all respects similar to the
one which Miss Davis had made to him, except that the
*habendum* did not attempt to limit the grantee's interest to a
life estate. Levy then made a similar conveyance on May
22nd, 1899, to Albert N. Horner, who jointly with his wife
conveyed the lot back to Miss Davis by an ordinary deed in
fee on April 7th, 1902. No wife joined in the execution of
the deed from Levy or Bradley. It appears from the record
that when Levy executed his deed he had a wife who is still
living but it does not appear whether Bradley was married
or single when he executed his deed.

Mary A. Davis died seized and possessed of the Calhoun
street lot, leaving a will in which the appellee Charles H. Mac-
Nabb was named as executor and given power to sell the real
estate of the executrix. He sold the lot; in exercise of the
power so conferred on him, to the appellant and reported the
sale to the Orphans' Court for ratification. The appellant
excepted to the ratification on several grounds of which the

only one now insisted upon is an alleged defective title to the lot in the testatrix at the time of her death.

The Orphans' Court overruled the exceptions and ratified the sale by the order from which the present appeal was taken. It does not appear that any claim adverse to the title of the testatrix has ever been asserted by any person, but the appellant contends that the title offered him is open to attack from Rose Taylor and her children because the ejectment by which their leasehold is claimed to have been extinguished was defective *first,* because Miss Davis did not have the legal title to the reversion in the lot by reason of the fact that the deed of it to her had not been recorded, and *secondly* for want of proper parties defendant.

He also contends that the conveyance from Wm. H. Bradley to Charles C. Levy vested in the latter a fee simple estate in the lot and conferred on his wife a right of dower in it which is still outstanding as she did not unite in the deed from her husband to Albert N. Horner.

We will consider these contentions in the order in which we have stated them.

As no rights of creditors of Miss Davis or grantees under conflicting deeds of the reversion in the lot are involved in this litigation, it is unnecessary for us to determine whether under section 19 of Art. 21 of the Code the recording of the deed conveying the reversion to her, more than six months after its execution and delivery, operated by way of relation to vest the legal title in her from its date. Whatever might have been the effect of the delay in recording that deed upon the rights of Miss Davis as plaintiff in the ejectment if it had been set up as a defense in that case, neither Rose Taylor nor such of her children as were defendants in that suit and duly served with process and made no defense, but permitted judgment to go against them by default could at this late day successfully contest the validity of that judgment or its operation to extinguish their leasehold interest in the lot. *Klinefelter* v. *Carey,* 3 G. & J. 349.

Nor could the technical defect, if such it were, of not bring-
ing all of Rose Taylor's children into the ejectment affect the
marketability of Miss Davis' title after her actual re-entry
upon the property for a default under the terms of the lease.
The record does not show whether any one was in actual oc-
cupancy of the premises at the time of the default and re-
entry but it does show that Rose Taylor who was a defend-
ant in the ejectment had at both of those times a legal title
to the leasehold estate, subject to the conditions of the lease,
coupled with the right of possession and there is no sugges-
tion of the existence of any claim or possession hostile to
hers. The default under the lease during her life estate hav-
ing been followed by a re-entry of the landlord caused a for-
feiture of the entire leasehold estate, including the interest
therein of her children as remaindermen which like her life
estate was held upon the condition of the payment of the
rent and subject to the rights of the landlord as set forth and
reserved in the lease by which the leasehold was created.

In *Abrahams* v. *Tappe,* 60 Md. 317, this Court had occa-
sion to pass upon the effect of an omission to make an as-
signee and a mortgagee of a leasehold parties to a landlord's
ejectment for non-payment of rent, under such circumstances
as to throw much light upon the present case.

The lease in that case contained a provision for re-entry
upon non-payment of rent, similar in all respects to the one
now under consideration except that the period of default was
one year instead of six months. After two successive assign-
ments of the leasehold had been made and the second assignee
had executed a mortgage upon it, a default occurred in the
payment of the rent for more than one year. Mrs. Abrahams
the owner of the reversion, thereupon instituted an ejectment
against the original lessee only without noticing either of the
assignees or the mortgagee of the leasehold, and after obtain-
ing judgment by default was placed in possession of the prop-
erty under writ of *habere facias* and paid taxes and erected
improvements upon it. A default having thereafter occurred
under the mortgage that had been made by the assignee of

the leasehold, the mortgagee took initial steps toward its fore-
closure whereupon the owner of the reversion, who had re-
entered upon the property, filed a bill in equity and obtained
a temporary injunction restraining the foreclosure. The in-
junction having been subsequently dissolved, an appeal was
taken to this Court and our predecessors reversed the order
of dissolution and directed the injunction to be made abso-
lute.

CHIEF JUDGE ALVEY, speaking for the Court, said, in the
opinion in that case: "The rent having been allowed to re-
main unpaid for more than one year, and Mrs. Abrahams
having by reason of that default, and in the assertion of her
rights as landlord secured an actual and peaceable reposses-
sion of the premises, which she in fact found deserted, the
lease became absolutely forfeited and the mortgage so far as
it affected the premises fell with it. Whatever technical error
there may have been in making George Feller (the original
lessee) the defendant in the ejectment suit we consider im-
material. She took and held possession in assertion of her
claim to the ownership of the fee and her actual re-entry fol-
lowing the perfected right to re-enter worked the forfeiture
of the lease and she stands as if the lease had never been
made. So far then as she is concerned the interest or estate
conveyed in the mortgage is as if it had never existed. *May-
hew* v. *Hardesty,* 8 Md. 479; *Cooke* v. *Brice,* 20 Md. 397."
The Court further observed in its opinion that the mortgagee
held the interest in the leasehold estate which she took under
her mortgage "subject to all of the conditions and covenants
of the lease to George Feller" by which it was stipulated that
the lessor might re-enter upon the premises if the rent be-
came in arrear for one year.

The remaining ground, of the appellee's objection to the
title, that there was an outstanding potential right of dower
in the lot in the wife of Charles C. Levy gives us little dif-
ficulty. The deeds to Levy and Bradley may be treated as
identical in form and considered together, for the attempted
limitation in the *habendum* of the deed to Bradley was in-

effectual to limit to a life estate the absolute grant to him and his legal representatives made in earlier part of the instrument. *Winter* v. *Gorsuch,* 51 Md. 180, 184; *Marshall* v. *Safe Deposit Company,* 101 Md. 13; *Pritchett* v. *Jackson,* 103 Md. 698.

These deeds must be construed according to the familiar principle that the intention of the parties, to be ascertained from the whole contents of the instrument, must prevail unless it violates some principle of law. *Buchanan* v. *Steuart,* 3 H. & J. 329; *Handy* v. *McKim,* 64 Md. 568. Looking then to the contents of the two hybrid conveyances now under consideration we are forced to the conclusion that, whatever may have been the precise interest intended to have been conveyed by them, they do not manifest on their faces an intention on the part of the grantors to convey a fee simple estate. In each instance the limitation in the deed is to the grantee, his personal representatives and assigns, and the duration of the estate granted is declared to be "for all of the terms of years yet to come and unexpired therein" and it is said to be "subject to the payment of the annual rent of fifty-three dollars.'

The phraseology employed in the deeds is not appropriate to an intention on the part of the grantors to convey an estate in fee simple but is such as is currently used in assignments of existing leaseholds. There was no existing leasehold in the Calhoun street lot at the time of the execution of the deeds, for as a result of the re-entry upon it by Miss Davis for non-payment of rent, the former leasehold estate had been extinguished and she held the lot in fee. The practical explanation of the form of the two deeds doubtless is that Miss Davis when she made the one to Bradley did not realize the full effect of the re-entry which she had made and supposed she could convey the former leasehold estate in the lot and retain the reversion and rent, and that Bradley simply followed the form of her deed in making his conveyance to Levy.

As the estate conveyed by these deeds came back to Miss Davis under the deed to her from Horner and wife it is unnecessary for us to construe them further than to determine that they did not convey a fee and that therefore the wife of Levy, and of Bradley if he had one, acquired no right of dower in the lot.

For the reasons stated by us we are of the opinion that nothing appearing in the record impairs the soundness or marketability of the title to the lot in question and that the order ratifying its sale to the appellant should be affirmed.

*Order affirmed with costs.*