MILDRED JONES *v.* IDA ALBERT ET AL.

[No. 606, September Term, 1981.]

*Decided February 5, 1982.*

The cause was argued before MORTON, MOYLAN and LISS, JJ.

*Richard D. Rosenthal* and *George A. Epstein* for appellant.

*Michael A. Christianson,* with whom were *Richard W. Reische* and *Callahan, Calwell & Laudeman* on the brief, for appellees Baltimore Federal Savings and Loan Ass'n and Ledon and Eula Eaddy. *Eugene Hettleman* for appellee Ida Albert.

MOYLAN, J., delivered the opinion of the Court.

The appellant, Mildred Jones, the personal representative of the estate of William R. Hoskin, appeals from a judgment entered in the Superior Court of Baltimore City on April 7, 1981, denying her application to be admitted as a defendant in an action in ejectment filed by the appellee Ida Hopkins against William R. Hoskin and Bernice G. Hoskin, his wife; denying the appellant's motion to strike the judgment entered by that court against Mr. and Mrs. Hoskin on October 8, 1979; and granting the motion of the appellees Ledon Eaddy, Eula M. Eaddy, and the Baltimore Federal Savings and Loan Association to intervene as plaintiffs.

Mr. and Mrs. Hoskin became the owners, as tenants by the entireties, of a leasehold interest in 57 North Monastery Avenue in Baltimore City by a recorded deed dated January 15, 1965. Ida Albert eventually acquired the reversionary interest in the property by a recorded deed dated November 13, 1975. Mrs. Hoskin died intestate on September 16, 1974, and Mr. Hoskin died intestate on March 25, 1978. No estate, however, was opened for either of them until October 16, 1980, when an estate was opened for Mr. Hoskin, and the appellant was appointed personal representative.

In the meantime, after Mr. Hoskin's death, the house on Monastery Avenue remained vacant, and the annual ground rent in the amount of $75 was not paid. As a result, on May 2, 1979, Ida Albert filed an action in ejectment against William Hoskin and Bernice Hoskin, as leasehold owners, seeking the recovery of her property, damages, and the right of re-entry reserved to her under the terms of the lease. On May 4, 1979, a copy of the summons and declaration were posted on the premises. Service of process was returned "Mortuus Est" as to William and Bernice Hoskin in May and July, 1979. At this time, no estate of record existed. Upon inquiry, however, Ida Albert learned through information provided by neighbors that both Mr. and Mrs. Hoskin were deceased. Subsequently, notice of publication was given on three separate occasions in August and September, 1979, as to the nature of the action against the Hoskins. On October 8, 1979, a judgment by default was entered awarding restitution of the property to Ida Albert and nominal damages of one cent. Possession of the property was delivered to Robert Sempeles, attorney for Ida Albert, on October 25, 1979. On October 15, 1980, Ms. Albert, acting through a straw party, conveyed the leasehold interest in the property to Ledon and Eula M. Eaddy for the sum of $17,900, subject to a purchase money deed of trust granted by Mr. and Mrs. Eaddy to Baltimore Federal Savings and Loan Association.

After opening the estate of William Hoskin and being named as his personal representative, the appellant applied for leave to be admitted as a defendant in the ejectment action and sought to have the court strike the judgment of October, 1979. Mr. and Mrs. Eaddy and Baltimore Federal Savings and Loan Association sought to intervene as parties plaintiff. The trial court denied the appellant's application for leave to be admitted as a defendant and her motion to strike the judgment, which were filed over one year after the conclusion of the ejectment proceeding, while granting Mr. and Mrs. Eaddy's and Baltimore Federal's petition to intervene as parties plaintiff.

On appeal, the appellant argues that the default judgment was void because it was entered against persons who were

dead when the action was commenced and because it affects property of a person who was not a party to the action when the judgment was entered. We find none of the appellant's arguments of any merit and hold that the Superior Court of Baltimore City had jurisdiction to award restitution of the property to Ms. Albert in accordance with the right of reentry reserved to her in the lease and that her reentry onto the leasehold property pursuant to the terms of the lease, after the default judgment, worked a forfeiture of the lease.

After the annual ground rent was not paid for over six months, Ms. Albert, exercising her right to reenter the property and extinguish the leasehold estate if the ground rent became due and remained unpaid for six months, instituted an ejectment proceeding pursuant to Real Property Art., § 8-402 (c) in the Superior Court of Baltimore City and named as defendants the only persons known to her to have a claim adverse to her title — Mr. and Mrs. Hoskin, named as tenants in the lease. Real Property Art., § 8-402 (c) at that time provided in pertinent part:[1]

> "(c) *Ejectment where one-half year's rent is due.* — In all cases between landlord and tenant, where one-half year's rent shall be in arrear and the landlord has the lawful right to reenter for the nonpayment thereof, the landlord may, without any formal demand or reentry, serve a copy of a declaration in ejectment for the recovery of the property; if the declaration cannot be legally served, or no tenant be in actual possession of the property, then he shall affix it upon the door of any demised messuage, or if the action of ejectment shall not be for the recovery of any messuage, then upon some notorious place of the property described in the declaration in ejectment; such affixing shall be deemed legal service thereof, which service or affixing of such declaration in ejectment shall stand in the place and stead of a demand and reentry."

---

1. A 1981 amendment to this subsection, effective July 1, 1981, made certain stylistic changes without affecting the substance of the subsection.

Ms. Albert attempted personal service upon Mr. and Mrs. Hoskin. When personal service could not be effected and the summons was returned "Mortuus Est," a copy of the declaration was affixed to the door of the premises. Ms. Albert further inquired whether any estate had been opened for Mr. Hoskin, as to effect record title in the lease in a personal representative. Ascertaining that no record existed of any estate or personal representative, she additionally attempted service by publication under Md. Rules 111a and 105b, which govern service of process in actions relating to land and cover situations where the whereabouts of the defendant are unknown. Unknown here were the whereabouts of any heirs. The order of publication stated, *inter alia,* "Both Defendants were returned Mortuus Est as of the May, 1979 and the July, 1979 return days and the premises were posted with a copy of the Summons and Nar in Ejectment on May 4, 1979. There is no estate of record for either Defendant." It was only after restitution of the property had been made and the property was transferred to the Eaddys and Baltimore Federal did Ms. Albert learn, in October, 1980, that the appellant had had an interest in the leasehold estate.

The fact that Mr. and Mrs. Hoskin were dead when the ejectment proceeding was instituted does not affect the validity of the default judgment. An ejectment proceeding is a mixed action. It partakes of an action *in rem* in so far as it involves clarification of title and recovery of possession of land. On the other hand, it requires *in personam* jurisdiction for the court to award monetary damages. See 1 *Poe's Pleading and Practice,* §§ 49 and 50 (6th ed. 1970). Jurisdiction to award restitution existed in the court, therefore, based on the geographic location of the property and the right of reentry reserved to the reversionary owner in the

---

It designated the four sentences in subsection (c) as paragraphs (1), (2), (3), and (4), respectively; substituted "ground rent" for "rent" near the beginning of the present paragraph (1) and in paragraph (3); and substituted "If the circuit court as defined in § 1-101 (b) of the Courts and Judicial Proceedings Article" for "If the court" at the beginning of the present paragraph (2).

lease. Since the property was vacant and personal service of process could not be effected against the tenants of record, affixing the declaration to the door of the premises and service of process by publication were as effective to bind the land as if personal service had been effected. Real Property Art., § 8-402(c) specifically provides that "if the declaration cannot be legally served, or no tenant be in actual possession of the property," affixing the declaration to the door "shall be deemed legal service thereof," and Md. Rule 111b explicitly provides that where the whereabouts of the defendant is unknown, service by publication or posting "shall be in all respects as effectual to bind the land and to affect the title thereto as if personal service had been made upon such defendant. . . ." See 4 *Poe's Pleading and Practice,* § 465 (6th ed. 1975).

Furthermore, Ms. Albert's reentry onto the leasehold property pursuant to the terms of the lease, after the default judgment, worked a forfeiture of the lease, extinguishing any interest in the leasehold estate that the appellant may have had. The Court of Appeals made this clear in *Abrahams v. Tappe,* 60 Md. 317, and *Link v. MacNabb,* 111 Md. 641. In *Abrahams v. Tappe,* after the rent had not been paid for eighteen months, Mrs Abrahams, the owner of the reversion, instituted ejectment proceedings against George Feller, the tenant of record. Under the terms of the lease, Mrs. Abrahams had the right to reenter the property if the rent was in arrears for one year. In the meantime, the property had been conveyed through a straw party to George Feller's wife, Wilhelmina Feller, by an unrecorded deed. The Fellers, in turn, then granted a mortgage upon the property to Caroline Tappe. Following a judgment by default, where neither the named defendant nor the actual but unrecorded leasehold owner, Wilhelmina Feller, appeared to defend the action, Mrs. Abrahams was placed in possession and reentered the property, which was vacant. After six months had expired, she asserted fee simple title to the land, paid the taxes and erected new buildings on it. When Mr. and Mrs. Feller defaulted on payment of the mortgage debt, Caroline Tappe filed a petition for the sale of the leasehold

interest in the mortgage. Mrs. Abrahams and her husband filed a bill to restrain the sale. An injunction was granted restraining the sale and then dissolved, and Mr. and Mrs. Abrahams appealed. The Court of Appeals held that the mortgagee of the leasehold took it subject to all its conditions and covenants and failure to pay the rent and keep the taxes paid was clearly a default in her as in the original lessee. The Court went on to hold, at 60 Md. 322-323:

> "The rent having been allowed to remain unpaid for more than one year, and Mrs. Abrahams having by reason of that default, and in the assertion of her rights as landlord, secured an actual and peaceable repossession of the premises, which in fact she found deserted, the lease became absolutely forfeited, and the mortgage, so far as it affected the premises, fell with it. Whatever technical error there may have been in making George Feller the defendant in the ejectment suit we consider immaterial. She took and held possession in assertion of her claim to the ownership of the fee, and her actual re-entry following the perfected right to re-enter, worked the forfeiture of the lease; and she stands in relation to the property, as if the lease 'had never been made.' So far then, as she is concerned, the interest or estate conveyed in the mortgage is as if it had never existed." *Mayhew v. Hardesty,* 8 Md. 479; *Cooke v. Brice,* 20 Md. 397.

Likewise, in *Link v. MacNabb,* 111 Md. 641, the Court held that default in the payment of rent followed by a judgment in ejectment and the reentry of the landlord caused a forfeiture of the entire leasehold interest, including the interest of the remaindermen, all of whom were not made parties defendant in the ejectment action. The Court there said, at 111 Md. 646:

> "Nor could the technical defect, if such it were, of not bringing all of Rose Taylor's children into the ejectment affect the marketability of Miss Davis' title after her actual re-entry upon the property for

a default under the terms of the lease. The record does not show whether any one was in actual occupancy of the premises at the time of the default and re-entry but it does show that Rose Taylor who was a defendant in the ejectment had at both of those times a legal title to the leasehold estate, subject to the conditions of the lease, coupled with the right of possession and there is no suggestion of the existence of any claim or possession hostile to hers. The default under the lease during her life estate having been followed by a re-entry of the landlord caused a forfeiture of the entire leasehold estaté, including the interest therein of her children as remaindermen which like her life estate was held upon the condition of the payment of the rent and subject to the rights of the landlord as set forth and reserved in the lease by which the leasehold was created."

See also Real Property Art., § 8-402 (c) (1974), providing in pertinent part:

"If the court shall enter a verdict for the landlord, he shall have judgment and execution in the same manner as if the rent in arrear had been legally demanded and a reentry made. If the tenant or other person claiming or deriving under the lease, shall permit a judgment to be rendered against him, and execution to the executed thereon, without paying the rent and arrears, together with full costs, and without proceeding for relief in equity within six calendar months after the execution, the tenant and all other persons claiming and deriving under the said lease shall be barred and foreclosed from all relief or remedy in law or equity other than by appeal for reversal of such judgment, and the landlord shall thenceforth hold the property discharged from the lease."

Although an occasional result at surface glance may seem

harsh, the distinction which our law draws between an action *in rem* and an action *in personam* is, on balance, an invaluable one. The procedural requirements and the consequences that follow are but the necessary incidents of that distinction. The policy considerations undergirding the law were well-articulated by Judge Karwacki in the course of the hearing:

"... [T]he problem here is there is a policy which I think is expressed in 8-402 (c), as well as the long history of dealing with ground rent litigation in this State, as well as foreclosures generally of real estate, that when you are dealing with this kind of in rem proceeding there is a definite public policy in favor of certainty of title. Given this situation, this case probably illustrates it as well as any other. You have two people who died. It is not until a year later that a relative from Ohio arrives on the scene and discovers they had real estate, at least a leasehold estate, at the time of their death. That gives you some indication of how close she was to her relatives who died here. What do we do in a situation like that? Is it incumbent upon the landlord to search the United States of America for relatives of a deceased leasehold owner, and what happens during the hiatus while searching? Does the property remain vacant, subject to vandalism? That is not in the public interest, I don't think. A decision in favor of your motion to strike would, in my judgment, create great mischief in the desire of the City and its citizens to promote continuity of ownership of property in the City. It is not desirable that property lie fallow. That's why we have statutes like this which set up pretty strict procedures with regard to ejectment, and put the burden upon the successors in interest to a deceased tenant to come in within a six month period to relieve against the forfeiture."

For all of these reasons, we believe that Judge Karwacki was eminently correct when he concluded:

"... [W]e are dealing here with an enrolled judgment at the time we have a suggestion of death filed and an application to be admitted as a defendant filed by Miss Jones as the personal representative of the original defendants, and also at that time a motion to strike default judgment filed. This is fully a year and two months after the conclusion of the eviction proceedings, and a writ of possession being executed by this Court in favor of the landlord in a proceeding which I think was conducted in accordance with Section 8-402 (c) of the Real Property Article of the Code.

The reason for that section of the Code, which is merely a recodification of what is long existing Maryland practice, which is commented upon in Poe's Book on Practice and Procedure, is the fact that there is a definite public interest in certainty in land transactions, and the public's need to rely on land titles. To permit this kind of action would, in my judgment, jeopardize every action conducted pursuant to Section 8-402 (c) and result in chaos.

Further, I believe I am supported in these views by the cases which have been cited by the plaintiff in this action, and I do think the decisions of the Court of Appeals in *Abrahams v. Tappe,* 60 Md. 317, and *Link v. MacNabb,* 111 Md. 641, are a complete answer to the application of Miss Jones and her motion to strike proffered here.

*Judgment affirmed; costs to be paid by appellant.*