# POTOMAC LODGE NO. 31, I. O. O. F., *vs.* FRANCIS H. MILLER.

*Wills: devises to children; selection to be made by them in order; not void for uncertainty; failure of those to act who have first right; jurisdiction of Equity. "Election." Tenants in common: adverse possession. Title: parol proof. Estoppel: acts in pais. Deeds: recitals in——. Specific performance; title; doubts. Trust: duration and termination. Statute of Uses.*

Where a testator leaves pieces of property to three children, one to have the first choice, one the second choice and the remaining tract to the third child, if the one with the first choice does not exercise it within a reasonable time according to the terms of the will, equity may give the other parties relief; and so also in the case of the party with the second choice should he fail to exercise his right of selection.

p. 411

Such devises do not create tenancies in common of all the lots.

p. 416

Such devise is not void for uncertainty, because the will provides means by which the devisees can be made certain.

p. 411

*Id certum est quod certum reddi potest.*    p. 411

In such a case, although some statement or declaration showing what selection had been made should be put on record, yet such testimony is not the only evidence by which it could be shown.    p. 411

An election may be determined by matter in *pais* as well as by matters of record; but it must be by plain and unequivocal acts.    p. 412

An "election" is a choice or selection; it is the obligation imposed upon a party to choose between two inconsistent or alternate rights or claims, in cases where there is a clear intention of the person from whom he derives one right, that he should not enjoy both.    p. 411

Where the heirs or assigns of an intestate institute an action of ejectment to recover his lands, they may rely upon parol testimony to prove the death of such intestate, and who were his heirs. p. 412

Title by adverse possession may be proved by parol evidence. p. 412

Proof as to which child collected rent from which piece of property; the recitals made in deeds by two of the children of the testator and their descendants; the statement in the executor's accounts, etc., were *held* to be admissible to prove what selection had been made by the parties. pp. 413-415

Recitals in deeds are not binding as to third parties. p. 415

The children of one of the devisees had conveyed away one of the pieces of property mentioned in the will: *Held,* they were bound by the recitals in the deed and could not be permitted to assert title under the will to either of the other pieces of property. p. 415

Title by adverse possession may be acquired by one tenant in common against others, but stronger evidence is required in such a case. p. 415

Where a testator left property to his son in trust for the latter's children and fixed no time during which he should hold the property in trust, nor imposed upon him any duties except to select the property to be so held in trust, and made no disposition of the property after the death of the son's children and did not limit their interest to life estates or any other estate than in fee, *it was held* that the trust did not extend beyond the life of the son, when all the children were of age. p. 416

Under the Statute of Uses, the use was executed in the *cestui quo trustent*, and the legal and equitable title became vested in them. p. 418

Where no intention to the contrary appears, the language used in creating a trust will be limited and restrained to the purpose of its creation, and when these are satisfied the estate of the trustee ceases to exist and his title becomes extinct.
p. 417

Specific performance of a contract for the purchase of real estate may be declared although the title of the purchaser will depend upon adverse possession.          p. 418

Not every doubt or suggestion, or even a threat of contest, will be sufficient to prevent the specific performance of a contract for the purchase of real estate.          p. 418

*Decided June 13th, 1912.*

Appeal from the Circuit Court for Washington County, in Equity (KEEDY, J.).

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER and STOCKBRIDGE, JJ.

*Albert J. Long* (with whom were *Elias B. Hartle* and *Leon R. Yourtee* on the brief), for the appellant.

*Henry H. Keedy, Jr.,* and *J. Clarence Lane,* for the appellee.

BOYD, C. J., delivered the opinion of the Court.

The appellee filed a bill in equity against the appellant for the specific performance of a contract to purchase a property on the west side of South Potomac Street in Hagerstown. The appellant filed an answer in which it stated that it wanted the property, and was ready and willing to pay the balance of the purchase money if the appellee could convey such an estate in the property as is required by the agreement, but alleged that he could not do so. The Circuit Court for Washington County decreed specific performance by the appellant as prayed for in the bill, and from that decree this appeal was taken.

George Brendel, by his last will and testament, which was probated the 14th day of August, 1855, left to his daughter,

Elizabeth G. Smith, a lot on South Potomac Street and all of his personal property. He directed his executor to rent out all of the rest of his real estate for such a length of time as was required to raise from the rents the sum of $1,200.00, which sum he gave to his daughter for the purpose of aiding her in erecting a comfortable home on the lot he devised to her. He then gave her $250.00 which was to be paid by charging her with the appraised value of the personal property he had left her and paying the balance out of the rents of the real estate after the $1,200.00 had been realized.

The next items in the will are as follows:

"Item. I give and devise to my son, Henry G. Brendel, to hold in trust for his children that may be living at the time of my death, the first choice of all my houses and lots, except the one I have herein devised to my daughter Elizabeth (the two houses on Antietam street are to be considered one property), and the said property so selected by my said son Henry, as trustee for his said children, shall be given over to him, my said son, after the money, which is to be paid to my said daughter Elizabeth, shall have been raised out of the rents of my real estate as aforesaid.

Item. I give and devise to my daughter, Catherine Hammer, the second choice of my houses and lots, she to have possession of the same when a sufficient amount shall have been raised from the rents as aforesaid to be paid to my said daughter Elizabeth, said property so selected by my said daughter Catherine shall be held by her during her natural life, and after her death to go to her children, share and share alike.

Item. I give and devise my remaining house and lot, that is the one that will be left after my son Henry as trustee aforesaid, and my daughter Catherine shall have respectively selected theirs as aforesaid, to my son John's two children, their heirs and assigns, forever, my said grandchildren to get possession of their property when a sufficient amount has been raised from the rents for the purposes aforesaid, as in the case of my son Henry and daughter Catherine."

On the 3rd day of June, 1905, Annie A. Gray and husband, Mary E. Brendel, Franklin A. Brendel, Graves S. Brendel and wife, and Charles H. Brendel and wife, who

are described in the deed as "being the heirs at law of Henry
G. Brendel, late of Washington County," conveyed the prop-
erty in controversy to the appellee.    The answer of the
defendants gives as reasons why the plaintiff could not con-
vey such an estate as is required by the agreement between
them the following: (*a*) Because the above-named grantors
are not all of the children of Henry G. Brendel, deceased,
who were living at the time of the death of George Brendel,
and the descendants of such children; (*b*) Because Henry G.
Brendel, trustee, never made a legal and proper choice and
selection of the property mentioned in the bill of complaint
from and among the three separate properties left and devised
by George Brendel, as required and directed by the will;
(*c*) Because, no legal and proper choice or selection being
made, the title to the property would likewise be in Catherine
Hammer and John Brendel's two children, as well as in the
said Henry G. Brendel, trustee; and (*d*) Because the trust
is still existing.

The first objection (*a*) was abandoned by the appellant,
and the testimony shows that all of the children of Henry G.
Brendel, living at the time of the death of George Brendel,
united in the deed.  We will consider objections (*b*) and (*c*)
together.

At the time of the death of George Brendel he owned
what he treated as four pieces or parcels of ground,—one
being the south half of Lot No. 130 on South Potomac Street,
which he left to his daughter, Elizabeth G. Smith, another
being the north half of that lot, and being the property in
controversy; another consisting of two houses on Antietam
Street, which the testator said were to be considered one
property, and the other on the Williamsport and Hagers-
town Turnpike, now known as Jonathan Street.   The testa-
tor died in 1855, and Henry G. Brendel died in 1890.

The theory of the appellant is that as the will did not des-
ignate what particular property the respective devisees should
take, they were tenants in common of all of them, and hence

there should have been a deed of partition, or a deed from each two of them to the third. But it is clear from the will that the testator did not intend that they should be tenants in common—on the contrary, he said that Henry G. should hold the lot he selected for his children living at the death of the testator, that Catherine should have the one of the two remaining lots which she selected and the two children of his son John should have the other one. There can be no doubt about the right of Henry to make the first choice, and it becomes in reality a question of what is sufficient evidence of his choice, and not the right to make it. The first choice was a right that Catherine and John's two children could not deprive him of, and could not well aid him in. The testator did not devise the three lots to Henry, Catherine and John's two children, with direction that they should divide them between themselves, giving Henry the first and Catherine the second choice, but he gave to Henry, to hold in trust for his children, "the first choice" of all his houses and lots (except the one devised to Elizabeth), "and *the said property* to selected by my said son Henry, as trustee for his said children, shall be given over *to him,*" after the money was raised out of the rents of the real estate for Elizabeth, and he gave to Catherine the second choice of his "houses and lots, she to have possession of the same when a sufficient amount shall have been raised from the rents as aforesaid." The gift to John's two children shows still more clearly that they were not intended to be tenants in common, for all that he gave them was "my remaining house and lot, that is the one that will be left after my son Henry, as trustee aforesaid, and my daughter Catherine shall have respectively selected theirs as aforesaid"—they "to get possession of their property when a sufficient amount has been raised from the rents for the purposes aforesaid, as in the case of my son Henry and daughter Catherine." In a word, he gave one property to each.

The testator apparently intended that the property should remain in the executor until the money for Elizabeth was raised, and then he was to turn over the possession of the one selected by Henry to him, of the one selected by Catherine to her and the remaining one to John's two children. It might have been better for the executor to have placed on the land records some statement or declaration showing what selections had been made by Henry and Catherine, but while that might have been more satisfactory evidence of the selection by them, it was not the only evidence by which the selection can be shown.

It was suggested in the appellant's brief that if Henry had refused to make first choice, he could have prevented any of the parcels from ever vesting in Catherine or John's children, and that if Henry did make his selection but Catherine had refused to make the second choice she could have prevented either of the two remaining parcels from vesting in John's children. But, although such a contingency was not likely to arise, as Henry had the first choice, if he had refused to make it after the money for Elizabeth had been raised, he could have been compelled to make the selection within a reasonable time, and upon failure to do so a Court of equity could have given the other parties ample relief, and so in the case of Catherine, as affecting John's children. The testator manifestly intended that each of the three should have one of the lots, and if those having the first or second choice refused to exercise it, the Court could either have made it for them or at least have protected the other devisees.

In *Bouvier's Law Dictionary* "election" is defined "choice, selection," and "The obligation imposed upon a party to choose between two inconsistent or alternative rights or claims, in cases where there is clear intention of the person from whom he derives one that he should not enjoy both." We do not understand it to be claimed by the appellant that the devises to the several devisees were invalid, because the testator did not leave any particular one of the three properties to either of them. Such devises are not void for uncer-

tainty as to the property because the testator has provided means by which they can be made certain. The maxim *"Id certum est quod certum reddi potest"* is applied to such cases, 1 *Jarman on Wills,* 362. The devise being valid, and there being nothing on the face of the will from which it can be determined which of the three properties Henry took, under the authority to make the first choice, the question is, what evidence can be used to show what his choice was? If it be conceded, as it must be, that the testator did all required of him in order to vest title in Henry to one of the three properties, but did not prescribe the character of evidence which should be necessary to show what his choice was, it would be remarkable, and an exceedingly harsh rule of law, if the interests of the children of Henry must be defeated, merely because there is no deed or declaration of Henry or of the executor to him in the land records. It must be kept in mind that the testator did all that was necessary to have the title pass out of him, and we think we have shown that no interest in the lot selected by Henry vested in Catherine or John's children, and hence if they had made a deed to Henry it would not have conveyed any interest in that lot.

It cannot be denied that the title to much valuable real estate must depend in part upon parol testimony. If A. dies intestate, leaving children or other heirs, his real estate descends to his heirs, but if they or their assignees institute an action of ejectment, *relying on that title,* in order to recover they must prove that A. died intestate and who his heirs were. There may be, and often is, no record evidence to prove who the heirs were, and resort is had to parol evidence to establish that, as well as the fact that the ancestor died intestate. Property held by adverse possession is proved the same way, and what is more analogous to this case is where the doctrine of election is applicable. It was said in the opinion of JUDGE PRICE, adopted by our predecessors in *Whitridge* v. *Parkhurst,* 20 Md. 62: "It is certain that an election may be determined by matter *in pais* as well as by

matter of record, but it can only be by plain and unequivocal acts, *White's Eq. Ca., Streatfield* v. *Streatfield,* 65 Law Library, 289. It may be either *express* or implied. Considerable difficulty often arises in deciding what acts of acceptance or acquiescence amount to implied election. This question must be determined more upon the circumstances of each particular case, than upon any general principle. *Dillon* v. *Parker,* 1 Swans. 382, note; *White's Eq. Ca.,* 65 Law Library, 271, note. To constitute an election there must be a choosing between the two; the taking of the one and the rejection of the other." We, of course, understand that the election there spoken of is not precisely the same as the choice, election or selection, whatever it may be called, Henry was to make, but there can be no more ground for allowing such an election as is referred to in that case to be determined by matter *in pais* than there is for such as there was in this case and it is for that reason we refer to and rely on that decision as decisive of the right to prove the "first choice" by matter *in pais.*

What then are the important facts shown in the record? The evidence is that Henry lived in Frederick when his father died, and he moved to Hagerstown in 1871, where he lived in this property until he died in 1890. He collected the rents from it before he moved to Hagerstown, although the evidence does not show just when he began to do so. After his death his widow and at least one of his children continued to live there until the widow's death in 1904. On September 30th, 1863, the executors of Samuel Eichelberger, who was executor of George Brendel, settled an account in the Orphans' Court of Washington County. They charged themselves with the inventory of personal property of George Brendel amounting to $120.27, also with rents received from various parties—amounting in all (including the personal property) to $2,259.67½. They got credit for various sums, including taxes, repairs, etc., leaving a balance due the estate of $1,605.37, which amount was made up of the $120.27 of personal property and $1,485.10 rents from the

real estate.    They distributed "To Elizabeth G. Smith,
specific legacy in aiding her in putting up a comfortable
house (see will of testator) $1,200.00," and also $129.73
balance of the $250.00 left her by the will, and then, after
paying two notes and an account of Elizabeth G. Smith
which the account of the executor states were paid "by agree-
ment of the heirs of decedent (they being all of legal age),"
they distributed the balance due, as follows: "And distrib-
uted to the following heirs of said deceased, according to the
annual rent of the respective real estates they have selected
under the will of said deceased,

To Henry G. Brendel, in trust for his children $14.89
    Catherine Hammer...................... 16.37
    John Brendel's two children.............. 10.42 $41.68"

Some of those rents were collected as late as July 1, 1863,
and therefore it would seem that it took until that time to
collect the amount necessary to pay Elizabeth G. Smith, as
directed by the testator.    Manifestly the selections were
made prior to that time—September 30th, 1863.

The testimony shows that John G. Brendel and Maria A.
Minnick were the two children of John Brendel.    On Feb-
ruary 16, 1866, John G. Brendel and wife and Mrs. Min-
nick and husband conveyed to Alpheus R. Appleman the
parcel of ground on the Hagerstown and Willamsport Turn-
pike road, which George Brendel owned.    In that deed they
recited the will of George Brendel, that Henry and Catherine
"did pursuant to the provisions of the said will exercise their
several rights of election, and did each of them choose a cer-
tain house and lot whereof the said testator died seized and
possessed leaving the house and premises hereinafter de-
scribed which by a further provision in the said will were
devised to the two children of John, the son of said testator,"
etc.

On the 14th of November, 1878, the children of Catherine
Hammer, and their wives and husbands, conveyed to J.
Calvin Hoffman the western part of Lot No. 285, fronting
on West Antietam street, and the same day they conveyed

the eastern part of that lot to J. C. Dayhoff. The testimony shows that the Antietam street property went to Mrs. Hammer. On the 14th of May, 1875, P. B. Small, executor of Elizabeth G. Smith, conveyed to Emma S. Dayhoff the property left her by her father, and as we have seen on the 3rd of June, 1905, the children of Henry, the husband of Annie A. and the wives of the others conveyed the property in controversy to the appellee—reciting that it was the same property devised to Henry, in trust for his children, by George Brendel.

It would be difficult to find a case in which the essential facts were more clearly proven, if that can be done, as we hold it can be, by matters *in pais*. The probabilities are that since the account was settled in September, 1863, the several parties collected the rents from or occupied their respective properties. The evidence shows that such was the case with Henry's property. As early as February 16, 1866, the children of John conveyed the property which they said was left for them after the other two children of the testator had made the selections authorized by the will. While it is true that recitals in deeds are not always binding on third parties, such recitals as these would be binding on the children of John, and inasmuch as they conveyed away one of the three properties owned by the testator, they would not be permitted to assert title to either of the others under the will. So with the children of Catherine Hammer, if it becomes necessary to prove the selection by the respective parties of the several lots no stronger or more convincing evidence as to which were selected could well be produced than we have by their deed and other evidence in the case.

But even if the appellant's contention that the devisees were tenants in common were conceded, the facts and the acts of the several parties show conclusively such adverse possession as could be relied on. It is not the law that there can be no adverse possession by one tenant in common against another, but more evidence is required. "The ouster by a tenant in common, of his co-tenant, does not differ in its

nature from any other ouster, nor in any respect except in the degree of evidence required. The distinction relates to the character of the evidence necessary to prove that the possession was adverse." 1 *Am. & Eng. Ency. of Law,* 804. The appellee and those under whom he claims have been in possession of this property for over forty—probably nearly fifty years, and under such circumstances as can admit of no doubt of such an ouster as would effectually preclude the other descendants of George Brendel from recovering any interest in this property. So from either standpoint, although in our judgment they were not tenants in common, there is no doubt about the title being good as against them.

(*d*) The only other question we are called upon to consider is whether there was still an existing trust. It will be noticed that there is nothing in the will to fix the time Henry should hold the property in trust, nor is there anything defining the trust or stating what he should do, beyond selecting the house and lot for his children. One of them, Miss Mary Brendel, was only five years of age when her grandfather died, and some of the others were doubtless under age, as the testator had been dead fifty years when the deed to the appellee was made, and all of Henry's children were still living. The testator may have intended that Henry should hold the property as long as he lived and any of his children were under age, but there is nothing to show that he intended that it should be held in trust beyond his life—at least if all of his children were of age when he died. All of them were then of age, and there could be no reason for holding it in trust beyond that time. The testator did not make any disposition of it after the death of Henry's children, did not provide for the survivors having the use of it after the death of any of them, and did not limit their interests to life estates or other estate less than a fee. When, then, Henry was dead and all of his children were of age, there was no occasion for the continuance of the trust, even if it can be assumed that the testator intended that he should in any way have the benefit of the property during his life.

It was said by JUDGE BRISCOE in *Lee* v. *O'Donnell,* 95 Md.
538: "Now, while it is conceded that the testator did not
name or fix any definite period when the trusts created by the
article of the will now in dispute should terminate, yet we
think it is manifest from a critical examination of the will,
that it was not his intention that these trusts should last
forever, but they were to cease and have an end. The rule
of law is well settled that where no intention to the contrary
appears, the language used in creating the trust estate will
be limited and restrained to the purposes of its creation, and
when they are satisfied, the estate of the trustee ceases to
exist and his title becomes extinct. The extent and duration
of the estate are measured by the objects of its creation."
Again it is there said: "The nature and duration of a trust
estate are to be controlled by the requirements of the trust.
The trustees in this case have no interest in the property in
question, excepting the holding of the bare legal title, and
there is no duty to be performed by them except to collect
and pay over the income to the persons who have the bene-
ficial interest." As all of the children of Henry were of age
when he died, there was no possible reason for the appoint-
ment of another trustee, and if one had been appointed there
was nothing for him to do. It would have been an unneces-
sary and unauthorized burden on the owners. It was said in
*Thompson* v. *Ballard,* 70 Md. 10, "As the trustee has no
active duties of any kind to perform, and there is no longer
any title requiring protection by his retention of the legal
estate, the purposes of the trust have been accomplished. It
must therefore be declared to be at an end." See also *Long*
v. *Long,* 62 Md. 65; *Brillhart* v. *Mish,* 99 Md. 458; *Brown*
v. *Reeder,* 108 Md. 653.

In this case the only active duty the trustee was directed
by the will to perform was the selection of the house and lot.
He was not instructed to rent the property or told what use
should be made of it. At least as soon as it was selected, the
children of the trustee had a vested estate in fee—there being
nothing in the will to limit it to a less estate. Certainly

since 1890, if not since the selection of the property was made, under the Statute of Uses the use was executd in the *cestuis que trustent,* and the legal, as well as the equitable, estate became vested in them. That is so thoroughly settled by the decisions of this Court that we will without further discussion of the subject simply refer to some of them. See *Ware* v. *Richardson,* 3 Md. 547; *Hooper* v. *Felgner,* 80 Md. 271; *Numsen* v. *Lyon,* 87 Md. 41; *Graham* v. *Whitridge,* 99 Md. 292; *Prince de Bearn* v. *Winans,* 111 Md. 474. In view of the conclusion we have reached as to the trust, it is unnecessary to refer to the deed made to the appellee by Charles H. Brendel on December 8, 1909, which purported to convey the legal title to this lot.

It follows from what we have said that in our judgment the appellee can convey such a title as the agreement calls for. It was said in *Levy* v. *Iroquois Co.,* 80 Md. 304: "The purchaser has the right, we have said, to demand a title which shall enable him not only to hold his land, but to hold it in peace; and one so clear of doubt as will enable him to sell the property for its fair market value. At the same time it is not every doubt, or suggestion, or even threat of contest that will be sufficient; otherwise an assailing purchaser might in every case raise or make such an objection. And to avoid this the rule is now well settled, that the doubt must be a reasonable doubt, and one sufficient to cause the Chancellor to hesitate, whether the purchaser should be obliged to complete the contract of sale." The title in this case is not only free from reasonable doubt for other reasons we have given, but it has been so held by the appellee and those under whom he claims for about half a century as to make it as safe as any title can well be. In this State purchasers may be required to take titles depending upon adverse possession. *Lurman* v. *Hubner,* 75 Md. 268; *Bay* v. *Posner,* 78 Md. 42.

> *Decree affirmed, the costs to be paid by the appellant.*