# SAMUEL W. SOWERS

## *vs.*

## HENRY H. KEEDY, JR., ET AL.

*Adverse Possession—As Between Co-Tenants.*

An apparent, adverse, exclusive, open and notorious possession by a father, his daughter and the daughter's devisee, extending over sixty-nine years, is sufficient to confer a marketable title.                                                             p. 450

Where there is a partition in fact between tenants in common, and a part performance, a court of equity will have regard to and enforce such partition agreed to by the parties.

p. 451

A direction in a will for a sale of land and the division of the proceeds among testator's children constitutes them tenants in common.                                                             p. 451

The possession of one tenant in common is ordinarily regarded as the possession of all.                                             p. 451

One co-tenant may oust the others and set up an exclusive right of ownership in himself, and an open, notorious and hostile possession of this character for the statutory period will ripen into title, as against the co-tenants who were ousted.  ·

p. 452

*Decided December 10th, 1919.*

Appeal from the Circuit Court for Washington County, in Equity (HENDERSON, J.).

Submitted on briefs to BOYD, C. J., BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and ADKINS, JJ.

*Samuel B. Loose,* for the appellant.

*H. H. Keedy, Jr., Harry Brindle, C. A. Little* and *Robt. H. McCauley,* for the appellees.

STOCKBRIDGE, J., delivered the opinion of the Court.

This case comes before the Court by way of an appeal from an order of the Circuit Court for Washington County, in Equity, overruling the exceptions filed by a purchaser, to a sale reported by the appellees as trustees.

The point raised by the exceptions is that the trustees cannot give to the purchaser a good and merchantable title to the land reported by them as sold to him.

The facts which form the basis of the exceptions are clearly and concisely stated in the opinion of the Circuit Court for Washington County. The exceptions assert and the answer of the trustees admits that there is a break in the paper title.

"The lot was conveyed by George Zinn and wife to William Downey in 1784, with a ground rent reserved of 4 shillings 6 pence on the whole of lot 36, and that Downey conveyed the south half of the lot (the portion in question) to Seth Lane in 1800, subject to the ground rent. Seth Lane never conveyed this half lot away by any deed of record, and when he died in 1825 he willed his home and lot and meadow lots under clause 2 to his wife for life, and directed that at her death they be sold and the proceeds divided amongst his seven children not named, and under clause 4 he leaves all 'the remainder of his personal property to be divided among his children, share and share alike, and their proportion of bank stock to be transferred to them on the books of the bank.' There is no direct evidence to show that his residence was on lot 36, but as that was the only land he had except meadow lots and as the language of clause 4 is more applicable to goods and chattels than to leasehold property, it may be assumed, I think, that clause 2 applied to lot 36. Now the records show no evidence of a sale of this lot by Seth Lane's executor, his son, Charles G. Lane, but his accounts show that he received from different persons purchase money for the lots (presumably the meadow lots) and from J. B. Motter money for the house (presumably the house on lot 36). At any rate, there is no complete

record title out of Seth Lane's estate. If it is neces-
sary, therefore, to have an unbroken record title, the
exception must be upheld. But it is proven in the case
by affidavits that are to be taken as true, under the
agreement of counsel, that Charles G. Lane and his
family occupied the property as his own for a period of
69 years—from 1850. Their possession, first of Charles
S. Lane and then of his daughter under his will, and
his daughter's devisee under her will, has been open,
notorious, exclusive and continuous since 1850 until
now. This possessory title is sufficient to maintain a
suit in ejectment upon, and that being so I see no rea-
son to hold the title to be unmarketable or unsaleable."

There is thus an apparent, adverse, exclusive, open and
notorious possession by the parties to the present proceed-
ing, sufficient to give them title by adverse possession. *Arm-
strong* v. *Risteau's Lessee,* 5 Md. 256; *Morrison* v. *Ham-
mond,* 27 Md. 604; *Regents of the University* v. *Calvary
Church,* 104 Md. 635; *Gump* v. *Sibley,* 79 Md. 165; *Zion
Church* v. *Hilken,* 84 Md. 170; *Dickerson* v. *Kirk,* 105 Md.
638; *Safe Dep. Co.* v. *Marburg,* 110 Md. 410; *Joseph* v.
*Bonaparte,* 118 Md. 591.

In all of these cases the question arose in a somewhat dif-
ferent manner from that presented here; thus, a number of
them were actions in ejectment; in others the defect lay in
the fact that a conveyance of property to a religious corpora-
tion had not received the approval of the Legislature, and in
the case of the *Safe Deposit Co.* v. *Marburg,* the question
was presented under the terms of the Act of 1894, Ch. 661
(Code Art. 57, Sec. 7), where there had been no ground rent
demanded of the tenant of the leasehold for more than twenty
years.

None of these cases, however, deal with one question which
is in reality the most prominent question in this case.

Under the terms of the will of Seth Lane he devised the
lot now in question to his wife for life, and at her death

directed that it be sold, and the proceeds divided among his seven children, whose names are not given in the will.

Adjudications are abundant that where there is a partition in fact between tenants in common and a part performance, that a Court of Equity will have regard to and enforce such partition agreed to by the parties. In the present case, however, the direction of the will was for a sale of the property and the division of the proceeds into seven parts, thus constituting Mr. Lane's children and their descendants tenants in common.

It is a familiar proposition, as stated in 2 *C. J.*, 165, that where one of several heirs enters into possession or remains on the death of an ancestor, his possession is not adverse possession, for the reason that the possession of one tenant in common is regarded in law as the possession of all, according to the general rule.

The question of chief importance is, therefore, whether one co-tenant may oust the other, and set up an exclusive right of ownership in himself, and that an open, notorious and hostile possession of this character for the statutory period will ripen into title, as against the co-tenants who were ousted.

This phase of the case is clearly and concisely answered by a statement of the law as condensed in 1st *R. C. L.,* page 742, paragraph 62: "In order that one of several co-tenants may acquire title by adverse possession as against the others, his possession must be of such an actual, open, notorious, exclusive and hostile character as to amount to an ouster of the other co-tenants. Usually that which will show an adverse possession in other cases will have the same effect as against co-tenants. There is, however, this difference; acts of ownership by one co-tenant do not, in themselves, necessarily amount to the disseisin of the other co-tenants; indeed, they may be so explained as to show a consistency with the joint title. Generally, a co-tenant's sole possession of the land becomes adverse to his fellow-tenants by his repudiation or dis-

avowal of the relation of co-tenancy between them; and any act or conduct signifying his intention to hold, occupy and enjoy the premises exclusively, and of which the tenant out of possession has knowledge, or of which he has sufficient information to put him upon inquiry, amounts to an ouster of such tenant. A writing is unnecessary; but the claimant must show a definite and continuous assertion of an adverse right by overt acts of unequivocal character clearly indicating an assertion of ownership of the premises to the exclusion of the right of the other co-tenants. Of course, here as well as elsewhere, the character of the land must be taken into consideration. Where one co-tenant assumes to convey the entire estate, or any part of it, his deed or other instrument, though legally insufficient, constitutes color of title in the grantee, and an adverse possession thereunder for the statutory period will ripen into title as against all the co-tenants."

The law as thus stated is amply supported by very many decisions, a goodly collection of which will be found referred to in connection with this section.

Such being the facts and the law applicable thereto, the Circuit Court was clearly correct in its conclusion, and the order appealed from will be affirmed.

*Order affirmed, the costs to be equally divided between the parties.*