BURNHAM ET AL., ETC. *v.* BALTIMORE
GAS & ELECTRIC COMPANY, ETC.

(Two Appeals In One Record.)

[No. 251, September Term, 1957.]

508

*Decided July 18, 1958.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Charles J. Hessian* and *Kenneth C. Proctor,* with whom were *Claude A. Hanley, W. Lee Thomas* and *Proctor, Royston & Mueller* on the brief, for the appellants.

*Paul S. Clarkson,* with whom were *William Baxter, Benjamin Chambers* and *John Grason Turnbull* on the brief, for the appellee.

BRUNE, C. J., delivered the opinion of the Court.

The plaintiffs, Burnham and Lee, brought a suit in ejectment, stated to be to their own use and to the use of all their cotenants as owners of a parcel of land in Baltimore County, against the defendant, Baltimore Gas & Electric Company (formerly known as Consolidated Gas Electric Light and Power Company of Baltimore and sometimes referred to below as the "Electric Company"), which maintains and operates a power transmission line across the property. The plaintiffs appeal from a judgment for the defendant rendered on its motion for a summary judgment.

The suit grows out of the grant of a right of way for the power line, which was made by Mary Ann Burnham (Mrs. Burnham) to the Electric Company by a deed dated November 11, 1924. The plaintiffs assert that Mrs. Burnham was only a life tenant of the property and that the Electric Company's right to use and maintain the power line across the property in question ceased at the time of her death in

1943. The Electric Company, on the other hand, claims that Mrs. Burnham was not merely the life tenant of the property, but was the owner in fee, by virtue of the Rule in Shelley's Case, of a one-half undivided interest in the property; and it has filed a plea upon equitable grounds asserting that it is entitled to have the land partitioned and to have that part of the land which the power line occupies apportioned to the Burnham heirs, so that it may receive the full benefit of its deed from Mrs. Burnham. The plea further asserted that neither of the plaintiffs was entitled in equity and good conscience to a judgment against the Electric Company in this case and that if such a judgment were rendered, the defendant would be entitled to equitable relief against it. This plea was filed some six months after the defendant's initial plea of not guilty and its disclaimer of any interest in the property other than the right of way. We were informed that there is now pending a partition suit in which final action is being deferred pending the outcome of this appeal.

On the same day on which it filed its plea on equitable grounds the defendant also filed a petition to have the case set down for hearing on a question of law which, in brief, was whether or not the Rule in Shelley's Case was applicable to the deed under which Mrs. Burnham and the plaintiffs derived title. This question, the defendant said, "may be determinative of the rights of the parties hereto." A hearing was held on this question, and it appears to have been treated as the only question—at least at that time—requiring decision. The trial court filed an opinion sustaining the Electric Company's position. The motion for summary judgment was subsequently filed and granted.

It is necessary to state briefly the facts and the pertinent parts of the deeds out of which this controversy grows. The common ancestor of both of the plaintiffs (as well as of all other persons whom they claim to represent) was Eliza Ann Lee, who died intestate in 1874, predeceased by her husband. Mrs. Lee had two daughters. The elder, Priscilla, was born on February 3, 1843; the younger, Mary Ann, was born on April 9, 1850. Priscilla Lee died intestate in 1861, leaving

as her sole heir her son, Frank Lee, from whom the plaintiff, Charles Frank Lee, Jr., and other descendants of Priscilla now living are descended. Mary Ann married one Elijah Burnham. The plaintiff, Albert Washington Burnham, is one of fourteen children of that marriage and one of numerous descendants now living of Mary Ann, who died intestate on July 15, 1943, having been predeceased by her husband.

On June 28, 1852, one Daniel Warfield and Nancy Warfield, his wife, in consideration of the sum of $804.08, did "give, grant, bargain and sell" the premises in question to Eliza Ann Lee, her heirs and assigns by a deed or so-called "indenture," the habendum clause of which read as follows: "To have and to hold the said parts of tracts of land and premises above mentioned and described unto the said Eliza Ann Lee, her heirs and assigns forever. In Trust to and for the uses intents and purposes that is to say in trust for the use and benefit of her two infant children Priscilla Lee and Mary Ann Lee for and during their joint natural lives and the Life of the survivor of them, without impeachment of or for any maner [sic] of waste and after the death of the said Priscilla Lee and Mary Ann Lee, To Have and To Hold the said herein described land and premises to their heirs, in fee simple."

On November 11, 1924, the surviving sister, Mary Ann (Lee) Burnham (Mrs. Burnham) granted to the Electric Company the right of way above referred to. The deed was duly recorded and the Electric Company constructed, and ever since has operated and maintained, an electric transmission line across the property.

The principal question argued in this Court, as in the trial court, was as to the nature and extent of the interest or interests which Mrs. Burnham held in the property on November 11, 1924, when she granted the right of way easement to the Electric Company. Primarily, the answer to this question turns on the Rule in Shelley's Case. Though that Rule has been abrogated by statute in this state (Acts of 1912, Ch. 144), it was in force when the deed to Eliza Ann Lee was executed in 1852, and we must turn back to the law as it

stood prior to the effective date of that statute, to ascertain the interests created. See *Bowman v. Weer*, 204 Md. 344, 350, 104 A. 2d 620, the most recent of a number of cases decided by this Court, in which this proposition has been recognized. There is no dispute on that point in this case.

The Rule itself has been stated and restated in a number of cases. As Miller on Construction of Wills in Maryland, § 351, points out, its most generally approved form, at least in this State, is that given in 1 *Preston on Estates*, pp. 263-264, as slightly abridged and adopted by Chancellor Kent in 4 Comm. [14th Ed. *], p. 215. It has been quoted repeatedly by this Court (See *Williams v. Armiger*, 129 Md. 222, 226, 98 A. 542, and cases cited in note 1 to § 351, *Miller, op. cit.*), and reads as follows: "When a person takes an estate of freehold, legally or equitably, under a deed, will or other writing, and in the same instrument there is a limitation by way of remainder, either with or without the interposition of another estate, of an interest of the same legal or equitable quality, to his heirs, or heirs of his body, as a class of persons to take in succession, from generation to generation, the limitation to the heirs entitles the ancestor to the whole estate."

*The Restatement*, 3 *Property*, § 312 and the Comments thereon, deal with the Rule comprehensively, and bring out the possible difference in time under the rules stated in Subsections (1) and (2) of § 312 between the creation of a life interest and of a vested remainder in the ancestor and the merger (or coalescence as it is often called) of the life estate and of the remainder interest. Such merger may be postponed by an intervening estate, but the operation of the Rule is not barred. See Comments *l* and *m*, pp. 1760-1761. Nor does the fact that the life and remainder interests otherwise within the Rule are undivided interests in land prevent the operation of the Rule. See Comments *r* and *s*, pp. 1767-1770, and the illustrations therein set forth. See also 1 *Preston on Estates*, p. 318; *Simes* and *Smith, Law of Future Interests* (2d Ed.), § 1556, p. 463; *Stafford v. Martin*, 75 Md. XII, reported in full in 23 A. 734; *Waller v. Pollitt*, 104 Md.

172, 64 A. 1040 (conveyance to husband and wife "for their joint lives and the life of the survivor of them; and to their joint heirs **") ; 47 *Am. Jur., Shelley's Case, Rule in,* § 27, pp. 810-811.

The chief controversy in the present case with regard to the applicability of the Rule is whether or not both estates were of the same quality—that is both legal or both equitable, or one legal and the other equitable. The plaintiffs contend that the life estates to the daughters of Eliza Ann Lee were equitable and the remainders to their heirs were legal; the defendant contends that both were legal, and it further contends that even if either estate was equitable, both were equitable.

The plaintiffs base their contentions mainly on the fact that the life tenants were both infants and both females and, to some extent, upon the language of the *habendum* clause "without impeachment of or for any manner of waste." They argue that despite the complete absence of any active duties or powers imposed or conferred upon the trustee by the 1852 deed, it would be reasonable to infer that the grantors intended to set up a trust for the benefit of these infants, aged nine and two in 1852, during their minority and to continue it after they reached their majority so as to protect their property interests in the probable event of their marriage. They also urge that the term "without impeachment of waste" manifests an intention to create less than an absolute estate in the life tenants.

Taking up the last contention first, we think that the language "without impeachment of waste" as used in the 1852 deed is of no real significance as indicating an intention to create a trust and that it is without effect as an obstacle to the operation of the Rule in Shelley's Case. As is stated in *Miller, op. cit.,* § 352, p. 996, headed "Words and provisions showing intent to create a life estate only", "The rule in Shelley's case is a rule of tenure which is not only independent of, but generally operates to subvert, the intention. No matter how evident the intention to create but a life estate may be, when the words actually used bring the gift

within the rule, the intention must give way and the fixed rule must be followed." The learned author cites a number of cases in support of this and like statements of the operation and effect of the Rule, and on page 997 he continues: "Thus, * * * a declaration * * * that the estate shall be without impeachment of waste will not vary the legal import of the technical words, or prevent the remainder to the heirs from becoming an executed estate in the ancestor; * * *." *Clarke v. Smith,* 49 Md. 106, 120, cited by Mr. Miller, states this as a rule of law, although the phrase "without impeachment of waste" was not actually used in the will there under consideration.

Whether a trust is active or passive is a question which frequently arises in cases involving the Statute of Uses, because of the rule that the Statute will not execute a use where the trustee has active duties to perform. In the instant case, as already noted, the deed of 1852 confers no powers and imposes no duties upon the trustee, nor does it even provide that she shall convey title to the beneficiaries at any time. Accordingly, unless one or the other of the grounds upon which the plaintiffs seek to imply active duties on the part of the trustee is well taken, the trust is, we think, clearly passive. *Warner v. Sprigg,* 62 Md. 14; *Owens v. Crow,* 62 Md. 491. (The cumulative citation of authorities seems superfluous.)

The fact that the beneficiary of a trust is an infant is not of itself enough to convert a trust which imposes no active duties upon the trustee from a passive trust to an active one. *Hooper v. Felgner,* 80 Md. 262, 30 A. 911; *Warner v. Sprigg, supra; Owens v. Crow, supra; Lee v. O'Donnell,* 95 Md. 538, 52 A. 979; *Potomac Lodge v. Miller,* 118 Md. 405, 84 A. 554.

Nor is the fact that these beneficiaries were young girls who might later marry, plus the fact that at the time of the execution of the 1852 deed, legislation protecting the interests of married women in the separate use and enjoyment of their property had not then been passed, sufficient to manifest an intention to create an active trust. The appellants rely heavily upon *Ware v. Richardson,* 3 Md. 505, in support of the contrary view. There (as here) the deed was executed

prior to the enactment of Chapter 245 of the Acts of 1853 (now included in Section 3 of Article 45 of the 1957 Code), which first permitted a married woman to have the sole and separate use of her property without the intervention of a trustee. The deed of trust in that case was to a trustee for Mrs. Richardson, a married woman, for "her own proper use and benefit, notwithstanding her coverture, * * * without the * * * control of her present or any future husband * * * as fully as if she was sole and unmarried," and after her death to the use of her heirs. It was held that the deed (which used both the terms "bargain and sell" and "enfeoff") constituted a deed of feoffment, that there were active duties to be performed by the trustee in order to support the independent character of the wife's interest, that her interest consequently was equitable and that the Statute of Uses therefore did not operate to vest a legal life estate in her, and hence that her life interest being equitable and the remainder interest in her heirs being legal, the Rule in Shelley's Case did not apply. But the deed here is in quite different terms, and falls under the opposite rule which was stated but found inapplicable in *Ware v. Richardson, supra.*

In that case the court said (3 Md. 548): "It is clear that the mere interposition of a trustee to protect and secure a trust estate in a third person even though a married woman, will not prevent the use from being executed in the *cestui que use,* unless there is attached to the trustee the performance of some active functions or duties in order to support the trust. * * * It would follow then, was Mrs. Richardson not a married woman, or was not the estate by the terms of the deed limited to her *sole and separate* use, independent of her husband, that this would be a conveyance under the statute, and would vest the legal estate in her, notwithstanding her coverture, or the provision that she was to have but a life estate." In the instant case, at the time of the execution of the deed, neither Priscilla nor Mary Ann was a married woman, nor did the deed speak of their sole and separate use or of freedom from control of their husbands if they should marry. We think that the statement of the rule in *Ware v.*

*Richardson* which we have just quoted is controlling against the appellants' claim that active trust duties should be inferred from the possibility that these infant female beneficiaries might some day marry. See also *Brown v. Renshaw, supra,* 57 Md. 67, and the comment thereon in *Peter v. Peter,* 136 Md. 157, 170, 110 A. 211.

We are accordingly of the opinion that the trust under the 1852 deed was merely a passive trust.

Furthermore, on the facts of this case, even if the rule were otherwise as to either infancy or possible coverture, it would not avail the plaintiffs. The elder daughter's life estate terminated at her death in 1861. The younger daughter reached her majority in 1871, and her husband died many years before she did. Therefore, if there had been active trusts during the minority of both daughters or during the coverture of Mrs. Burnham, both would have terminated long before the execution of the deed from Mrs. Burnham to the Electric Company. A trust terminates when its purpose ceases. See *Lee v. O'Donnell, supra; Potomac Lodge v. Miller, supra; Miller,* op. cit. § 180 and cases therein cited; *Scott on Trusts,* §§ 69.2, 334; *Restatement, Trusts,* § 334, Comment *a.* Upon the termination of any such active trust (if there ever was one) the Rule in Shelley's Case would then operate. *Brown v. Renshaw, supra,* 57 Md. 67. See also *American Law of Real Property,* Vol. 1, § 4.49; *Restatement, 3 Property,* § 312, Comments *h* and *g.*

One distinction under the Statute of Uses as to the effect of differences in the form of conveyance employed which has been recognized by prior decisions of this Court is this: that where there is a feoffment to uses, the Statute will execute the use in the person to whose use the conveyance is made, but where the conveyance is by a deed of bargain and sale, the use will be executed in the bargainee and not in the person or persons to whose use the conveyance to the bargainee is made. *Matthews v. Ward,* 10 Gill & J. 443; *Brown v. Renshaw, supra,* 57 Md. 67; *Leonard v. Diamond,* 31 Md. 536; *Handy v. McKim,* 64 Md. 560, 4 A. 125; *Restatement, Trusts,* § 71, Comment *b,* Illustration 3. The basis of this

rule is that the bargainor remains the person enfeoffed, that the only use which is executed by the Statute is that in the bargainee, and that the further use in favor of a third party is a "use upon a use", which the Statute does not execute. The latter use is, however, recognized as valid in equity.

If this rule is applicable here both the life estates and the remainders in the present case would be equitable, and hence the requirement of the Rule in Shelley's Case that both estates must be of the same quality would be met. The trial court so held and the appellee so contends in its brief in this Court, relying upon *Brown v. Renshaw* and *Leonard v. Diamond, supra*. That is the only proposition for which either of those cases is cited in the opinion of the trial court or in the appellee's brief.

The defendant does not contend (and certainly the plaintiffs do not) [1] that the interests of the plaintiffs (and of those whom they claim to represent) are equitable and not legal estates. Actually, both the plaintiffs and the defendant contend that the present estates of the descendants of Eliza Ann Lee are legal estates. The plaintiffs contend that the 1852 deed created equitable life estates for reasons not based at all upon the form of the deed as being one of bargain and sale, and they contend that it created legal estates in remainder in them and in other descendants of Priscilla Lee and of Mary Ann Burnham. The defendants contend that under the Rule in Shelley's Case and the Statute of Uses, Priscilla Lee and Mary Ann (Burnham) acquired legal estates (though, as above noted, they also contend that the Rule in Shelley's Case is operative whether the life estates and remainders were both legal or both equitable).

In view of the fact that both sides agree that the present interests of the plaintiffs and of those whom they claim to represent are legal, it seems unnecessary to determine the precise basis upon which that conclusion rests.

We, therefore, need not decide whether the 1852 deed here

---

1. If the plaintiffs' interests were only equitable, they could hardly maintain a suit in ejectment. *Cf. Reid v. Gordon,* 35 Md. 174, 183; *Handy v. McKim, supra,* 64 Md. at 575, *Brown v. Reeder,* 108 Md. 653, 659, 71 A. 417.

in question should be construed as one of feoffment or of bargain and sale. See *Matthews v. Ward,* 10 Gill & J. 443; *Ware v. Richardson,* 3 Md. 505, 546-549; *Handy v. McKim, supra; Rogers v. Sisters of Charity,* 97 Md. 550, 55 A. 318; *Scott on Trusts,* 2nd Ed., § 71, p. 608; and *Carr v. Richardson,* 157 Mass. 576, 32 N. E. 958, and *Thatcher v. Omans,* 3 Pick. (20 Mass.) 521, both cited by Scott. If this deed should properly be regarded as a deed of feoffment, the only question as to the applicability of the Statute of Uses to the uses here declared would be whether the "trusts" were active or passive. If merely passive, legal title would be vested at once in the beneficiaries, without the need for any conveyance from the "trustee." *Hooper v. Felgner,* 80 Md. 262, 30 A. 911; *Prince de Bearn v. Winans,* 111 Md. 434, 474, 74 A. 626; *Judik v. Travers,* 184 Md. 215, 223, 40 A. 2d 306; *Miller, Construction of Wills in Maryland,* §§ 168, 176, 177; *Scott, op. cit.,* §§ 68, 69.2.

Nor need we decide whether or not, because of the passive character of the trust, even though (if the deed is properly to be considered a deed of bargain and sale) the Statute of Uses should not be considered as being strictly applicable, the trust should be deemed to have come into only momentary existence or to have terminated immediately upon its creation with the result that legal, as well as equitable, title would be vested at once in the beneficiaries. See 54 *Am. Jur., Trusts,* § 12, p. 29. See also *Tiffany, Real Property,* (3rd Ed.), § 289, pp. 495-496.

We may add that it has repeatedly been held, as in *Handy v. McKim, supra, Long v. Long,* 62 Md. 33, 65 and *Brown v. Reeder, supra,* 108 Md. 653, 71 A. 417, that a trust, without active duties to be performed by the trustee, for the "heirs" of a person to be determined at the termination of a precedent estate will not be treated as being a trust for an indefinite period and so as violating the Rule against Perpetuities; but it will terminate when the precedent estate and any active duties of the trustee come to an end.

Since the 1852 deed created only dry trusts (or even if it had created active trusts which became passive during Mrs. Burnham's life estate) and since the deed contains no pro-

vision for the conveyance of title by the trustee at any time either to Mrs. Burnham or to any other beneficiary, we find no necessity in this case for such a conveyance, or for a formal declaration in equity of the termination of the trust in order to vest legal title to their respective interests in the property in Mrs. Burnham (or in those claiming under her) or in those claiming as descendants of Priscilla Lee. See *Ridgely v. Pfingstag,* 188 Md. 209, 231, 50 A. 2d 578.

We turn now to the effect of the 1924 conveyance of the right of way by Mrs. Burnham to the Electric Company. There is no doubt of her right and capacity to convey a right of way to last for the duration of her life estate because she had the entire possessory interest in the property throughout that period, and it is conceded by the appellant, Burnham, that if the question under the Rule in Shelley's Case is decided adversely to the appellants (and we have so decided it), the Burnham heirs are estopped by this grant. However, the question remains as to whether she could create an easement (such as a right of way) in perpetuity that would bind the heirs of Priscilla Lee when their remainder interest ripened into possession at the death of Mary Ann Burnham. The authorities appear to be uniform in holding that a cotenant cannot by himself grant an easement that will bind his cotenants. *American Law of Property,* Vol. 2, Sec. 6.12, p. 51; *Tiffany, Real Property* (3rd Ed.), Vol. 2, Sec. 456, p. 273; 86 *C. J. S., Tenancy in Common,* Sec. 111, p. 517.

In *Susquehanna Transmission Co. v. St. Clair,* 113 Md. 667, 77 A. 1119, the plaintiff (the power company) owned an undivided four-fifths interest in a certain tract of land. The remaining undivided one-fifth interest was owned by the defendant. The power company wished to erect a section of a telephone line over a portion of the land and later a transmission line. The defendant objected and the power company brought suit in equity to enjoin interference by the defendant with the construction of the line. The Court of Appeals held that the power company had no right to erect such a line without the permission of its cotenant and said (p. 672): "One tenant in common has no right to alter or change the property to the injury of the other without his assent."

We think that this case is conclusive of the issue before us and requires a holding that the grant of 1924 from Mary Ann could not bind the heirs of Priscilla when their one-half undivided interest in the property became possessory in 1943.

As against the appellant, Lee, the Electric Company relies upon a colloquy between the trial judge and one of the counsel for the appellants at the hearing on the defendant's motion for the determination of a question of law, in which the court stated that "the question is, does the Rule in Shelley's Case apply? If so, partition proceedings are indicated and the Plaintiffs are out of Court. If not, the Plaintiffs are in Court. Is that correct?" To this, one of the plaintiff's trial counsel answered, "Yes, Your Honor." This appears in a certificate signed by the trial judge which is supplemental to the record. It was filed when the appellee objected to the appellants contending in this Court that the Priscilla Lee heirs would not be barred even though the Burnham heirs might be, because the point had not been raised in the trial court. We think that the existence of the question in the trial court is apparent from the appellee's own plea on equitable grounds, and we think that it would be pressing the statement of counsel rather far to put the Priscilla Lee heirs entirely out of court in this ejectment suit on the basis of that statement, though it might well bind the present appellant, Lee, to hold this case in abeyance pending the partition suit. In this connection we note that in the present case, unlike the *Susquehanna* case, the Electric Company's transmission line has been built and that it has been and still is in actual use. We do not mean to imply that pending the completion of such partition proceedings, if any, as the Electric Company may be entitled to bring or maintain, or pending condemnation proceedings, no injunction might issue to preserve the existing situation. Cf. *Dundalk Holding Co. v. Easter*, 215 Md. 549, 137 A. 2d 667.

The partition suit now pending, of which we were informed, is not now before us, and we do not undertake to pass upon the right of the Electric Company to maintain it. We think that in the present case the determination of the question involving the Rule in Shelley's Case is not decisive of the whole controversy in this ejectment suit, and hence

that the motion for summary judgment based thereon should not have been granted as to the heirs of Priscilla Lee.

> *Judgment affirmed as to Albert Washington Burnham, with costs to the appellee against him; and judgment reversed and case remanded for further proceedings as to Charles F. Lee, Jr., with costs to him against the appellee.*