GEE█ ET UX. *v.* GHEE ET AL.

[No. 70, October Term, 1949.]

*Decided January 13, 1950.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Thomas Knox* for the appellants.

The Court declined to hear argument for the appellees.

*Joseph Whitney Shirley, Jr.,* and *John George Vogeler,* on the brief, for the appellees.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a decree of the Circuit Court for Baltimore County, dismissing a bill for specific performance of a contract of sale, and to remove a cloud on the title of the appellants alleged to have been acquired by adverse possession. The lot in question adjoins the lot on which the appellants have resided for the past 41 years, on Featherbed Lane, near Owings Mills. It contains about half an acre of ground improved by a two-story building, formerly used as a lodge hall. In 1904, the lot was deeded to "Golden Gilt Lodge No. 3796 Grand United Order of Odd Fellows a body corporate under the jurisdiction of the Grand Lodge of the Grand United Order of Odd Fellows of the State of Maryland, and Household of Ruth No. 1783 of Owings Mills, State of Maryland working under the jurisdiction of the Sub-committee of Management of the Grand United Order of Odd Fellows in America." The bill recites that prior to the years 1915 and 1918, the complainants were members and trustees of Golden Gilt Lodge No. 3796 and Household of Ruth No. 1783, respectively, said lodges being local lodges of the Grand Lodge of the Grand United Order of Odd Fellows of Maryland and of the Sub-committee of Management of the Grand United Order of Odd Fellows in America, respectively. The latter two organizations were alleged to be corporations, with offices at 12th and Spruce Streets, Philadelphia. They were notified of the suit by publication and also by personal service outside of Maryland, but did not appear or answer. The local lodges were alleged to have disbanded in 1915 and 1918, respectively, when the membership fell below a total of six in each case. It

does not appear that either local lodge was incorporated. No charters, by-laws or minutes were produced. The appellee, Morgan Gee, the son of the appellants, is purchaser under the contract of sale at a price of $200.00. The appellee John H. Biby claims to be a surviving member of one of the local lodges, claiming an interest in the lot. When the Golden Gilt Lodge disbanded in 1915, the appellants assert that there were four surviving members. When the Household of Ruth disbanded in 1918, they assert that there were only three members surviving. The appellants claim to be the only surviving members of the two lodges at the present time.

The appellants' claim of adverse possession is based upon the testimony that James Gee took possession of the building after the lodges disbanded, and made substantial improvements and repairs, estimated at $500 in value. However, it is undisputed that, when the lodges disbanded, the surviving members asked him to take care of the property, and that when the building was rented to the County for several years beginning in 1931 or 1933 for school purposes, he deposited the rent in a bank in the joint names of Figgs and Thornton, two of the surviving members, and himself. There was testimony that the school authorities made repairs at that time. He admitted that Biby was a member when the lodge disbanded, but "Biby left and joined another lodge * * * they said anybody who left would lose their claim." When he put the money in the joint account he "didn't claim it [the property] at that time, but it was in my charge." He paid no taxes on the property, it was exempt as lodge property. John Biby testified that when the lodges disbanded, he was a member and at the last meeting it was voted that the building should be used for "community" purposes, and that Gee should have the privilege of using the land for his garden. Clara Figgs Holliday testified she was a member of the lodge when it disbanded, although this was denied by both the appellants. A number of other persons, the sons or daughters of deceased members who were alleged to have been

living and in good standing at the time when the lodges disbanded, testified that it was their desire that the property be "used for community purposes", and apparently claimed an interest in the property.

The chancellor delivered an oral opinion in which he said: "Of course the Court is not called upon in this case to determine the actual owner of this property, the only problem presented for determination being the one as to whether or not Mr. and Mrs. Ghee are the owners. The Court is completely convinced that their original possession was permissive, and in my judgment there has been no change in the facts since the original entry which changes that permissive holding. It may well be that heirs of persons who were members of the Lodge at the time they abandoned it, are not now the owners of the property. It might well be that the plaintiff would not be required to hold adversely against them, that the only adverse holding that can be required to maintain would be against the record holders of the title, that is the original or its corporate successor, if there were any. But that consideration is beside the point for the reason that the complainants holding must be adverse to somebody, perhaps it should be only adverse against the record owner, but if we predicate the views on that basis, still we must find an adverse, notorious, hostile claim to ownership. It is not sufficient that the possession be adverse, notorious and hostile. Possession must be accompanied by acts of ownership adverse to the true and real owner. Mere possession alone is not sufficient. It must be possession coupled with the claim of title or ownership. Nowhere in this case is there the slightest bit of testimony to show that the possession of the complainants was based on the claim of title or ownership. Manifestly they entered the property without any such claim. They entered it permissively. The Court recognizes of course that a permissive ownership can by acts subsequent be reduced into an adverse and hostile ownership, but no such facts are presented here. Whether or not Mr. Ghee thought the

original members of the Lodge had an interest in the Lodge until they died, may not be important in connection with adverse holding against the record title, but it is important as an indication of the manner in which he himself regarded his holdings. If he had regarded his holdings as absolutely hostile, notorious and adverse against the record owner, he would not in my judgment have divided the rentals proceeds of the property. I am not able to follow the argument that he did that gratis. He did that in my judgment because he believed, rightly or wrongly, that the people with whom he made the division had an equal interest in the property with him, had an equal interest as owners in the property with him. Otherwise, as I see it, he would not have made a division. The proof is also very unsatisfactory as to the improvements which the complainants claimed on the property. The testimony is to my mind more convincing that the improvements were made by the Board of Education, such as they were, rather than by Mr. and Mrs. Ghee. Certainly my belief would be that the larger improvements were made by the Board of Education to fit the building for school use, and such improvements as Mr. Ghee made were, in my opinion, minor, insignificant. Undoubtedly Mr. Ghee cultivated the land. He was a member of the Lodge and lived next door to and adjoining the property in question. It was a perfectly natural understandable arrangement when the Lodge disbanded, he was permitted this use, became virtually if not actually caretaker and supervisor, overseer and protector of the property. That in my judgment was the manner in which he came upon possession. And in my judgment his possession at no time attained any weight historically and adversely until perhaps the death of the last two of the elderly persons in whose name, jointly with himself, he acted as trustee. It may be from that time, it may be from the time he entered into a contract to sell his holdings. Even if they are, manifestly that time has not lengthened into the necessary twenty-year period. I am convinced from all

of the testimony, from inferences and from the logic of the method by which these people would naturally deal with each other, that Mr. Ghee did not claim to own the property, that he exercised no act of ownership, and that at the time this plea was brought about he had at no time occupied the property hostilely and adversely and did not so occupy it for the statutory period of 20 years and accordingly the relief he has asked for in his bill must be denied, and accordingly the bill will be dismissed."

We agree with the findings of the chancellor and his disposition of the case. If we assume, without deciding, that the record title is in the two local unincorporated lodges, and that upon their disbanding the then living members acquired or retained a common interest in the property, there is no proof that the appellants' possession has been adverse to the common ownership for the statutory period. *Cf. Ross v. Phillips,* 148 Md. 165, 167, 129 A. 21; *Sowers v. Keedy,* 135 Md. 448, 451, 109 A. 143; *Potomac Lodge v. Miller,* 118 Md. 405, 415, 84 A. 554; *Van Bibber v. Frazier,* 17 Md. 436, 451. On the contrary, it is clear that the appellants, within the statutory period, recognized the rights of other members in the rentals. Their holding was not "exclusive, hostile, under claim of title or ownership". *Peper v. Traeger,* 152 Md. 174, 136 A. 537; *Taussig v. Van Deusen,* 183 Md. 436, 37 A. 2d 915. Hence, their claim must fail. We cannot undertake to determine, upon this scanty record and in the absence of a determination by the chancellor, the exact state of the title.

*Decree affirmed, with costs.*